LILLIAN G. KEYS, Appellant, *v.* JAMES M. LEOPOLD and Others, Copartners Trading under the Name and Style of JAMES M. LEOPOLD & Co., and Others, Respondents.

First Department, June 12, 1925.

Brokers — stockbrokers — action by customer for accounting — complaint states cause of action in equity for accounting which alleges payment of specified sum to defendants as plaintiff's agents to be invested for her account and subsequent demand for accounting — limitation of actions — ten-year statute (Civ. Prac. Act, § 53) applies — statute did not commence to run until demand and refusal — pleadings — amended complaint supersedes original complaint — allegations in original complaint not considered on motion to dismiss amended complaint.

The complaint in an action by a customer against a stock brokerage concern states a cause of action in equity entitling the plaintiff to an accounting, which alleges that the plaintiff, upon the representations by the defendants that they could makes large profits upon money invested by her with them, paid over to the defendants $12,550 to be invested by them for her account; that she thereby constituted the defendants her true and lawful agents for the purpose of investing said sum of money, and that she thereafter demanded that the defendants account to her, which they have refused to do. The facts alleged show that a fiduciary relationship was established between the parties.

This action is inherently equitable in character and, therefore, the ten-year Statute of Limitations (Civ. Prac. Act, § 53) is applicable.

Since the circumstances under which the money was received by the defendants show the establishment of a trust relation of a continuing character, the statute did not commence to run against the plaintiff until she demanded an accounting and the defendants refused.

An amended complaint supersedes the original complaint and on a motion to dismiss the amended complaint the court will not consider allegations contained in the original complaint.

MARTIN, J., dissents, with opinion.

APPEAL by the plaintiff, Lillian G. Keys, from an order of the Supreme Court, made at the New York Special Term on the 10th day of September, 1924, and entered in the office of the clerk of the county of New York, granting defendants' motion to dismiss the amended complaint upon the ground that the cause of action did not accrue within the time limited by law for the commencement of an action thereon.

*Allen Caruthers,* for the appellant.

*Jackson, Fuller Nash & Brophy* [*Outerbridge. Horsey* of counsel; *G. Bruce Brooks* with him on the brief], for the respondents.

FINCH, J.:

The defendants are stockbrokers and members of the New York Stock Exchange. The plaintiff was one of their customers. In

so far as material to the questions here involved, the complaint alleges as follows:

" That on and from the 7th day of May, 1903, to and including the 9th day of July, 1908, the plaintiff herein, relying upon the statements of said James M. Leopold & Co., and each of said co-partners, then and there made to her that the plaintiff would make great profits upon her investments with them, she, the plaintiff, then and there between said dates as aforesaid, paid to the said co-partners the sum of Twelve thousand five hundred fifty ($12,550) Dollars, to be invested by said co-partners for her account, and that it was by reason of the promises of the said co-partners that they could make great profits for her, and of her confidence in their honesty and integrity, and by reason of their being members of the New York Stock Exchange that she paid to said co-partners said moneys, and then and there constituted the said James M. Leopold & Co. her true and lawful agents in the premises, and implicitly trusted in and relied upon them * * *. That the plaintiff herein has repeatedly since 1916 demanded of said defendants an accounting of the principal, as well as the profits of her said investment as aforesaid, but the said defendants refuse to render to her any accounting for her said moneys invested as aforesaid, or any part thereof, or to inform plaintiff how said money was invested. Wherefore, plaintiff demands judgment that the defendants be directed to render to plaintiff a true and correct accounting of the moneys so received by them on behalf of plaintiff, as well as the profits of any investments made by them, as well as the interest upon the principal and upon the profits, and the plaintiff have judgment against the defendants for the amount found to be due and that she have such other and further relief as she may be entitled to in the premises * * *."

The question first presented is as to the relationship between the parties, whether it was a debtor and creditor relationship or whether a fiduciary relationship was established. It is to be noted that the plaintiff alleges that the defendants represented that they would make great profits " upon her investments," and the plaintiff paid to the said copartners the sum of $12,550 to be invested by said copartners " for her account," and that the plaintiff demanded an accounting of the principal as well as the profits of her said investment. The prayer of the complaint is that the defendants be directed to render a true and correct accounting of the moneys so received by them " on behalf of plaintiff." Upon this motion it is necessary to take the allegations of the complaint as admittedly true. If, as urged by the respondents, the relationship of debtor

and creditor immediately arose upon the payment of the money, the money would then belong to the defendants, who would be debtors of the plaintiff, and the latter would have no further concern with what was done with the money. If such a relationship arose, the plaintiff could not allege in her complaint that she had paid over the money to be invested for her account. In *Haight* v. *Haight & Freese Co.* (112 App. Div. 475) the defendant was a corporation engaged in the business of stock brokerage, and the plaintiff paid over to the defendant certain moneys for the purchase and sale of various stocks, and while the plaintiff had ample margin to secure his account, the defendant sold out the stocks and refused the plaintiff an accounting. The claim of the defendant was there, as here, that the only relief the plaintiff could have was in an action at law, either for the amount due to the plaintiff or for damages; and that, therefore, the defendant was entitled to a dismissal of the complaint. This court, through Mr. Justice INGRAHAM, said: " The right of the plaintiff to an accounting must depend upon the relations that existed between him and the defendant. If the relation was, in its nature, fiduciary, then the plaintiff has a right to come into a court of equity and require the defendant to account for its acts in relation to the transactions between the parties." The court then quoted from *Marvin* v. *Brooks* (94 N. Y. 71), and said of that case: " This case has been since followed and has been considered as establishing the jurisdiction of a court of equity to require a person occupying the relation of broker who receives money from another to invest under his directions to settle and adjust the accounts between them."

Looking at the allegations of the complaint from another angle, it is to be noted that the plaintiff alleges that she constituted the defendants her true and lawful agents to make investments for her account. In *Marvin* v. *Brooks* (94 N. Y. 71) the plaintiff intrusted the defendant, as his agent, with money sufficient to pay one-half of the purchase price of certain securities. The court there said: " Such a decree [for an accounting] proceeds upon the ground that the defendant stands in the attitude of an agent dealing to some extent with the money or property of the other party; intrusted in a confidential relation with an interest which makes him a *quasi* trustee, and by reason of that relation knowing what the other party cannot know, and bound to reveal to him the entire truth." It thus appears that the plaintiff has alleged a cause of action in equity for an accounting.

The next question which arises is whether the six-year Statute of Limitations or the ten-year statute applies. (See Civ. Prac. Act, §§ 48, 53.) Because of the relation of trust between the par-

ties set forth in the complaint, the cause of action is inherently equitable in character. It falls within the provision of section 53 of the Civil Practice Act, prescribing a limitation of ten years to actions not specifically enumerated in article 2, in which section are included actions of equitable jurisdiction. In *Beugger* v. *Ashley* (161 App. Div. 576, 581) the court, by SCOTT, J., said: " The plaintiff's right to come into equity for an accounting is not to be doubted. It is urged, however, that whatever cause of action plaintiff has ever had is barred by the Statute of Limitations. Clearly, the only limitation applicable was the ten-year statute, which applies to an equitable action. (*Gilmore* v. *Ham*, 142 N. Y. 1.)" In *Treadwell* v. *Clark* (190 N. Y. 51, 59) the court said: " I think that the action was governed by the provision of section 388 of the Code of Civil Procedure [now section 53 of the Civil Practice Act] which fixes a limitation of ten years after the cause of action accrues, in a case where a limitation is not specially prescribed. This section applies to all equitable actions (*Gilmore* v. *Ham*, 142 N. Y. 1)." See, also, *Sheldon* v. *Sheldon* (133 N. Y. 1, 5), where the court said: " If the finding in this case was that the husband had simply received the wife's money for her use, to be paid to her upon request, the claim would be barred by the Statute of Limitations. (*Mills* v. *Mills*, 115 N. Y. 80; Code, § 410.*) But the finding contains an additional element, which is relied upon to take the case out of the statute. * * * It was further found that the money was received by the husband ' upon an understanding and agreement with the plaintiff, his wife, that he should control and invest the same for her benefit, and that he should, when requested, account to her for the said money and whatever increase there might be from investments thereof.' * * * The only question that is open for consideration in this court is whether this important part of the finding is based upon evidence."

The next question which arises is as to the commencement of the running of the Statute of Limitations. According to the allegations of the complaint, the money was received under such circumstances that there arose a trust relation of a continuing character, so that the statute did not commence to run against the plaintiff during the continuance of the relation, or until there had been some unequivocal act of disaffirmance on the part of the defendant.

As was said in *Stephens* v. *Crawford* (209 App. Div. 142, 149; affd., 239 N. Y. 535): " The defense of the Statute of Limitations was urged at the trial. As to this point, the learned trial justice said: ' As the complaint states a cause of action for a breach of

---

* Now Civ. Prac. Act, § 15.— [REP.

contract of bailment of plaintiff's stock, unlimited as to time, for the benefit of the decedent-bailee, * * * the bailor-plaintiff's cause of action * * * did not accrue until January 19, 1922, the date of the conceded demand, when for the first time, as far as appears, there was a denial of the bailment by the decedent-bailee * * * and the statute would have commenced to run only on January 19, 1922 * * *.' With this construction of the complaint we are in accord. 'A bailor's right of action against his bailee accrues at the time of the latter's breach of duty under the contract of bailment, and the Statute of Limitations then begins to run. Unless the term of the bailment is limited, no lapse of time bars the bailor's right to the property, and his right of action does not accrue and the statute does not begin to run until denial of the bailment and conversion of the property by the bailee or someone claiming under him. To set the statute in motion there must be some act of the bailee inconsistent with the bailment and changing the nature of his holding, such as a refusal to deliver on demand.' (See 25 Cyc. 1094, and cases there cited.)" It, therefore, follows that the statute did not begin to run until 1916, the date of the demand as alleged in the amended complaint.

Attention is called to the fact that the motion arises on an amended complaint, and that in the original complaint the plaintiff alleged a demand in 1908. The original complaint is superseded by the amended complaint for all purposes on this motion, and if the plaintiff had inadvertently stated a wrong date of demand in the original complaint, she has a right to correct it in the amended complaint and to stand alone on the latter upon this motion.

It follows that the order should be reversed, with ten dollars costs and disbursements, and the motion denied, with ten dollars costs, with leave to the defendants to answer upon payment of said costs.

CLARKE, P. J., MERRELL and BURR, JJ., concur; MARTIN, J., dissents.

MARTIN, J. (dissenting):

A motion was made at Special Term by the defendants to dismiss plaintiff's complaint on the ground that the action was barred by the Statute of Limitations. This is an appeal from the order granting that motion.

The complaint alleges that the respondents are members of the New York Stock Exchange, and, between May 7, 1903, and July 9, 1908, plaintiff paid to them or their predecessors, whose obligations they assumed, $12,550 to be invested for her account

This action to recover the amount so paid was commenced by the service of the summons and complaint on the 13th day of May, 1924.

The amended complaint alleges that plaintiff " paid to said copartners said moneys, and then and there constituted the said James M. Leopold & Co., *her true and lawful agents in the premises, and implicitly trusted in and relied upon them;* " that since 1916 she has repeatedly demanded an accounting; and that the respondents have refused and still refuse to render to her any accounting. The above allegation is an allegation of agency.

The plaintiff contends that this is an action in equity for an accounting and that the ten-year Statute of Limitations (Civ. Prac. Act, § 53) is applicable to it. Against this it is said that the action is for money had and received and an accounting; and that, there being no true relationship of trustee and *cestui que trust* between the parties, there being solely a contractual relationship, the six-year Statute of Limitations applies. " An action upon a contract obligation or liability express or implied, except a judgment or sealed instrument " is to be commenced within six years. (Civ. Prac. Act, § 48.)

The appellant also contends that this is not such a case as subdivision 1 of section 15 of the Civil Practice Act refers to; but that it comes within subdivision 2 of section 15 of the Civil Practice Act.

That the plaintiff seeks an account of the moneys received or that she might have a right to such an accounting does not prevent the application of the Statute of Limitations which applies to an action to enforce a contractual obligation. In *Middleton* v. *Twombly* (125 N. Y. 520) it is said (at p. 524): " The right of the plaintiff to recover this asset is based upon the obligations of the partnership agreement and a promise, to be implied from the circumstances of the case, to pay it. The dissolution of the firm, leaving this asset unaccounted for, under the circumstances, worked no bar to an action by the plaintiff to recover it. It is entirely immaterial whether the action brought is for an accounting as to the particular asset; or an action for money had and received; or upon an implied trust, the rule of limitation applicable thereto in the absence of special circumstances, not appearing in this case, is that of six years. (*Roberts* v. *Ely*, 113 N. Y. 128.) "

In *Mills* v. *Mills* (115 N. Y. 80) the court said: " Even if an accounting was necessary to determine the amount due from him to his brother, the account could be taken in an action at law as well as in an action in equity; and in whatever form the action was commenced the legal rule of limitations would be applicable. * * * All the relief asked for in the complaint is an accounting

and a judgment for a sum of money, and no other relief was needed or possible upon the facts established. This was in no sense an action to redeem, as there was no mortgage and nothing to redeem."

A trust was not declared by plaintiff, for according to her allegations those with whom she dealt took the money as her agents to invest it.

Contractual relationships frequently are such as to imply trust and confidence on the one side and loyalty and accountability on the other. Though the relation between principal and agent is of this kind, and though the agent may be required to account to his principal, the agent's obligation is nevertheless a " contract obligation or liability " within the meaning of section 48 of the Civil Practice Act.

In *Matter of·Waite* (43 App. Div. 296) the court said (at pp. 301, 302): " Under no conceivable circumstances can the Statute of Limitations be avoided in a suit by a principal against an agent when the cause of action accrued seventeen, or sixteen, or any number of years more than six prior to the commencement of the action. The cause of action against an agent accrues at the time the money of the principal is received and ought to have been paid over or applied to the use of the principal; no demand is necessary. (*Carr* v. *Thompson*, 87 N. Y. 160; *Mills* v. *Mills*, 115 id. 80; *Middleton* v. *Twombly*, 125 id. 520; *Wood* v. *Young*, 141 id. 211; *Yates* v. *Wing*, 42 App. Div. 356.)   *   *   *

" The referee says a trust or agency may be inferred from the acts of the parties. It is unimportant whether the relations of the parties be termed a trust or an agency, as the trust arising out of an agency is not such as to prevent the running of the statute. (*Budd* v. *Walker*, 113 N. Y. 637; *Mills* v. *Mills*, 115 id. 80, 86.) "

In *Rundle* v. *Allison* (34 N. Y. 180, 183) the court said: " The six years' limitation would therefore apply to the present case, were it not for some special circumstances which prevent the plaintiff from maintaining an action at law.   *   *   *   By reason of these peculiar circumstances, the plaintiff had no remedy at law, and the limitation of six years is not applicable to the case."

In the case of *Brown* v. *Brown* (83 Hun, 160; affd., 146 N. Y. 385) the court said: " The relation which the law created between them was that of debtor and creditor, and not that of trustee and beneficiary.

" There was neither trustee, trust fund nor beneficiary within the legal meaning of those terms. It was neither the intention nor contemplation of either party to create a trust, and the deceased was charged with no trust with respect to the money he received,

either in its management or control. In the case of *Kane* v. *Bloodgood* (7 Johns. Ch. 90) Chancellor KENT said: ' The word trust is often used in a very broad and comprehensive sense. Every deposit is a direct trust. Every person who receives money to be paid to another, or to be applied to a particular purpose to which he does not apply it, is a trustee, and may be sued either at law, for money had and received, or in equity as a trustee, for a breach of trust.' According to this principle, every lawyer who collects money for his client; in fact, every one who receives money for another, holds the same in trust.

" But such persons are not trustees of a subsisting trust in the sense in which that term is legally and properly employed. They receive money belonging to another, which, according to equity and good conscience, they are bound to pay over and they become debtors for the same.

" It is true that persons receiving money in a fiduciary capacity are sometimes denominated trustees *ex maleficio* and trustees *de son tort,* but when such terms are applied they are employed only to designate those implied trusts which the law sometimes raises for purposes of justice, and to such trusts the ordinary rules of Limitation apply. The six years' statute is applicable. (*Mills* v. *Mills,* 115 N. Y. 85.)"

In *Mills* v. *Mills* (*supra*), Judge EARL, writing for the court, said: " The defendant must always have known the amount of his loans and advances to his brother, and it was his duty to keep an account of his expenditures on account of the property transferred to him and hence he could tell when he had been fully reimbursed and the time came when he received moneys to and for the use of his brother under the obligation to make payment of them to him. Even if an accounting was necessary to determine the amount due from him to his brother, the account could be taken in an action at law as well as in an action in equity; and in whatever form the action was commenced the legal rule of limitations would be applicable. (*Rundle* v. *Allison,* 34 N. Y. 180; *Carr* v. *Thompson,* 87 id. 160; *In the Matter of the Accounting of Neilley,* 95 id. 382.)   *   *   *

" It is said, however, that the defendant was in some sense a trustee of the moneys received by him, and hence that the Statute of Limitations could not begin to run in his favor until he repudiated the trust. But the defendant was not a trustee in the sense contended for. He had received money belonging to another and became a debtor for the same, and he is in no other sense a trustee than every one is who receives money to and for the use of another. There was no actual express trust as to these moneys created by

the act of the parties. It is certainly not true that every mortgagee is a trustee of an express trust and the relation of trustee and beneficiary does not exist between mortgagor and mortgagee. If the defendant was in any sense a trustee of the moneys received by him, it was simply an implied trust which the law would raise for the purposes of justice; and as to the liability growing out of such a trust the ordinary rules of limitations apply. (*Kane* v. *Bloodgood*, 7 Johns. Ch. 90; *Lammer* v. *Stoddard*, 103 N. Y. 672.)" (See, also, *Wood* v. *Young*, 141 N. Y. 211; *Gilmore* v. *Ham*, 142 id. 1, and *Sheldon* v. *Sheldon*, 133 id. 1.)

If the relationship was contractual and the six-year Statute of Limitations applies, that period expired between the demand of 1916 and the commencement of this action in 1924, leaving nothing in section 15 of the Civil Practice Act on which plaintiff can rely. Her argument that subdivision 2 of said section applies, is based on her contention that a demand was a necessary preliminary to suit. But if she is suing to enforce a " contract obligation " we are not called upon to consider whether a demand was required, for over six years have elapsed since the demand was made.

The order should be affirmed, with ten dollars costs and disbursements.

Order reversed, with ten dollars costs and disbursements, and motion denied, with ten dollars costs, with leave to the defendants to answer within twenty days from service of order upon payment of said costs.