EMMA B. TABER, Respondent, Appellant, *v.* FIRST CITIZENS BANK AND TRUST COMPANY OF UTICA, as Executor, etc., of WILLIAM I. TABER, Deceased, and Others, Appellants, Respondents, Impleaded with IRA DEWITT TABER, Defendant.

Fourth Department, May 6, 1936.

*Dunmore, Ferris & Burgess* [*Gilbert R. Hughes* of counsel], for the defendants-appellants-respondents, First Citizens Bank and Trust Company of Utica, as executor, etc., and T. Harvey Ferris, as trustee, etc.

*Lee, Brennan & Bastow* [*Stephen W. Brennan* of counsel], for the defendant-appellant-respondent, Samuel Earl Taber.

*E. Howard Ringrose,* for the plaintiff-respondent-appellant.

LEWIS, J.   This appeal requires us to construe an antenuptial agreement.

William I. Taber died September 10, 1931, survived by a widow, who is the plaintiff in this action, and two sons by a former marriage, who are defendants.   His marriage to the plaintiff had occurred February 12, 1927.   Mr. Taber was then sixty-two years of age and for many years had been a prominent figure in the financial and business life of Utica.   He had served as president and later as chairman of the board of directors of one of its largest banks and had been a director of many of its business enterprises and social welfare organizations.   The plaintiff, a woman then fifty-five years of age, had also been previously married.   During a widowhood of thirty-one years she had proved herself possessed of uncommon

business ability, as is evidenced by the fact that through various successful ventures she had supported herself and had afforded her only son a college education.

The married life of the plaintiff with Mr. Taber, which covered a period in excess of four years, was concededly one of mutual confidence and contentment. Meanwhile he had enjoyed a substantial income which enabled him to provide generously for their living and travel. At the time of his marriage to the plaintiff he owned personal property valued at approximately $232,000, a substantial portion of which had been bequeathed to him by his first wife.

Under the provisions of his will, which was executed February 15, 1927, three days after his marriage to the plaintiff, the bulk of his estate was given to his two sons. The will also contained the following provision:

"*Fourth.* I have, by a separate instrument, made prior to the execution of this will, amply provided for my wife, Emma B. Taber, and I am, therefore, making no provision for her in this, my last Will and Testament."

By a codicil executed in 1929 he directed that, for a period of one year after the date of his death, his wife should be given the free use of his home with all household furnishings and automobiles owned by him and directed his executor to pay during that period all taxes, wages of servants and chauffeur and all other expenses incidental to the maintenance of the plaintiff's home, including provisions. This instrument also confirmed his former will except as inconsistent with the codicil.

In February, 1932, following the probate of her husband's will, the plaintiff commenced this action. By her amended complaint she alleges in substance that prior to her marriage to the decedent she was induced by his false and fraudulent representations to sign an antenuptial agreement which deprived her of such a share of his estate as would enable her to maintain her station in life as would become his widow; that an oral agreement was made between Mr. Taber and herself which provided that the instrument thus signed by her was a temporary arrangement designed to protect her in the event of an accident to him during a wedding journey then contemplated and that upon their return he would execute a will or other legal instrument by which ample provision would be made for her befitting her station in life; that in furtherance of a design to cheat and defraud the plaintiff, and within a short time after their marriage, her husband executed a will which, in disregard of the oral agreement, made no provision in her favor. By her prayer for relief plaintiff demands specific performance of the alleged oral agreement and that a lien be impressed upon the estate of her

deceased husband to the extent necessary for the accomplishment of that purpose, or in lieu thereof that she be awarded the sum of $98,630 with interest from the date of her husband's death. As an alternative relief she seeks a judgment which " will adapt the relief to the exigencies of the case, by way of money damages or otherwise, as right, justice, equity and good conscience may dictate. "

Upon the trial the plaintiff was barred by section 347 of the Civil Practice Act from testifying as to conversations had with the decedent relating to the alleged oral contract upon which she bases her demands. However, she produced a witness who testified that on February 5, 1927, while acting as a secretary to Mr. Taber and seated in a room which adjoined and opened into his private office, she overheard the following conversation between the plaintiff and Mr. Taber: " I am having [the attorney] draw up a temporary agreement to set aside my Bay Pond stock for you while we are on our wedding trip, and then when I return I am going to make over my will and give you this Bay Pond stock, and that is the very best thing I have, and it is something that will produce for you and enable you to live as you will live as my wife."

It is plaintiff's claim that the conversation quoted above expressed the agreement between Mr. Taber and herself which she now seeks to enforce; that she entered into that agreement with implicit faith in Mr. Taber and in his promise thus made and relying upon such promise she signed the antenuptial agreement which she now claims she was induced to sign by his false and fraudulent statements.

From the defendants' proof it appears that in contemplation of Mr. Taber's marriage, which was to occur on February 12, 1927, he had requested his attorney to prepare an antenuptial agreement. On February 5, 1927, the plaintiff met with Mr. Taber and his attorney at the former's office where, according to the attorney's testimony, the agreement which bears date February 2, 1927, and was subsequently executed, was presented to the plaintiff for examination. It recites the contemplated marriage of the plaintiff and Mr. Taber and a desire on his part to make a reasonable provision for her " in lieu of the rights which, after the consummation of said marriage [plaintiff] might or could have as wife, or widow or otherwise in the property " which Mr. Taber then had or might thereafter acquire. The attorney testified that Mr. Taber had not informed him of the securities which were to comprise the corpus of the trust for which the agreement made provision and that accordingly, in the draft which he prepared, he inserted an incomplete clause, " Two hundred fifty (250) shares of the capital stock," leaving blank the name of the security and its approximate value. At the conference of February 5, 1927, while in the presence of the

plaintiff and under instruction from Mr. Taber, he drew his pen through the typewritten words " Two hundred fifty (250) shares of the capital stock," and in place thereof inserted the clause, " a note of Bay Pond, Inc., dated Dec. 10, 1923, due 10 years from date with interest at 6%." He also inserted the figures " $25,000 " as the " approximate value " of the note previously described. The attorney asserts that he then told the plaintiff that the effect of the agreement was to release her interest in the estate of Mr. Taber in the event of his death and that it created a trust fund in the amount of $25,000 in her favor. Upon his inquiring whether the arrangement was agreeable to her she indicated her assent, after which she took up one copy of the proposed agreement and said, " I think I ought to read it first, don't you? My father always said I should read a paper before I signed it." Thereupon the attorney left the room while the plaintiff was reading one of the three copies of the proposed agreement. Upon his return he again asked the plaintiff whether the agreement was satisfactory. She replied in the affirmative and the agreement was then signed in triplicate, acknowledged before a notary public and one copy was delivered to her which has been in her possession or control ever since.

On the first business day after this transaction the attorney, as trustee under the agreement, called upon Mr. Taber for the note which was to constitute the corpus of the trust. It was then discovered that Mr. Taber had only one note of Bay Pond, Inc., which was in the amount of $75,000. He then arranged to deposit this note in escrow with the defendant trust company, and thereupon the trustee under the agreement received from the bank, as escrow agent, a participating certificate in the amount of $25,000. It is not disputed that the certificate in that amount was paid in full to the trustee a year later.

The plaintiff denies in practically every particular the testimony of Mr. Taber's attorney as to the occurrences which took place at the meeting of February 5, 1927, when the antenuptial agreement was signed.

However, we are relieved upon this appeal from consideration of that branch of the case for, if we understand correctly the trial court's decision, there is no finding of fraud upon the part of Mr. Taber or his attorney and it rejects plaintiff's claim that an oral contract was made on February 5, 1927, as alleged by her.

Our inquiry is thus narrowed to the question whether upon the evidence before us, the judgment rendered was a proper exercise by the trial court of its equitable powers. The judgment directs the defendant trust company, as executor of the will of William I.

Taber, to deliver to the trustee named under the agreement, fifty shares of the capital stock of Bay Pond, Inc., to be held and administered as a part of the corpus of the trust. In addition the executor is directed to pay over to the trustee the sum of $31,500 of which $17,083.33 is to be held by the trustee as a part of the corpus of the trust and the balance of $14,416.67 is to be paid over to the plaintiff as her individual property. It is thus seen that the trial court has sustained the antenuptial agreement as a validly executed instrument, free from fraud in its inception.

But it has gone further. After finding that the agreement is free from ambiguity as to its general provisions, the court finds that ambiguity does exist in the clause which defines the interest in Bay Pond, Inc., which was transferred to the trustee by Mr. Taber for plaintiff's benefit. Under the guise of so interpreting that clause as to express the intention of the parties, the trial court has revised the agreement to the extent that the corpus of the trust is made to consist of one-third of the total holdings of Mr. Taber in the notes and stock of Bay Pond, Inc., instead of a $25,000 note of that corporation as originally provided. To accomplish that result the judgment adds to the principal of the trust already received by the trustee, fifty shares of Bay Pond, Inc., stock, being one-third of the total stock holdings of Mr. Taber in that corporation and in addition thereto a portion of the dividends paid upon the stock to Mr. Taber during his lifetime, which the trial court finds were due to capital depletion.

The revision of the agreement which has been thus decreed is limited to the clause which creates the corpus of the trust: "A note of Bay Pond, Inc., dated Dec. 10, 1923, due 10 years from date with interest at 6%, having an approximate value of $25,000." If we examine first the clause itself, before considering its practical construction by the parties, we find no ambiguity in the language employed to describe the type of securities which were to form the corpus. The phrase " a note of Bay Pond, Inc.," can mean but one thing, especially when followed by a statement of its date, term, rate of interest and approximate value. We find nothing which imports an intention to include fifty shares of Bay Pond, Inc., stock in the trust; there is nothing remotely descriptive of corporate stock in any form.

Equally convincing of the intention of the parties is the proof of their own conduct in relation to the agreement. During all the time between the date of the antenuptial agreement in 1927, until his death in 1931, Mr. Taber owned 150 shares of Bay Pond, Inc., stock and dealt with it as his own. We find no evidence whatever of the intention which the trial court attributes to Mr. Taber —

to transfer to the trustee one-third of his stock holdings in Bay Pond, Inc., viz., fifty shares, to become a part of the corpus of the trust. On the contrary, there is undisputed proof that he had full knowledge of the securities which comprised the trust fund and repeatedly consulted with the trustee when principal investments were changed. We are warranted in attributing to Mr. Taber the same degree of scrupulous honesty which the trial court finds he possessed. If we do so we cannot approve the judgment herein which directs the executor of his estate to pay over to the trustee a sum equal to the dividends which the decedent had received in his lifetime and for more than four years used and treated as his own. Having acquitted Mr. Taber of fraud in connection with the agreement, we believe the trial court fell into error when it interpreted his intention contrary to the undisputed proof afforded by his own acts.

It is also conceded that during this period of more than four years before her husband's death the plaintiff received from the trustee semi-annually, as the agreement provided, a check for $750 — constituting the entire income from the trust. True the checks sent to her since May 2, 1931, have not been cashed — but they have not been returned.

As further proof that no one of the parties to the agreement misapprehended its terms because of ambiguity or otherwise, it is conceded that a year after the trust was created the Bay Pond, Inc., note was paid and with the proceeds the trustee — with Mr. Taber's knowledge and co-operation — purchased 1,000 shares, class A stock of Consolidated Water Company which remained in the trust until it was disposed of in 1929 at a profit of $2,500. Thereupon Mr. Taber requested the trustee to pay over to the plaintiff the profit resulting from the transaction. Accordingly the trustee prepared what was designated as a " Modification Agreement " dated November 4, 1929, which recited the entire transaction. By its terms plaintiff received the $2,500 profit and the trustee retained " the balance of the principal of said trust fund of $25,000, pursuant to the terms of said agreement under date of February 2nd, 1927, which is in all other respects hereby ratified and confirmed." The plaintiff signed and acknowledged this agreement. She also signed a receipt, which was indorsed upon the agreement itself, acknowledging payment to her by the trustee of $2,500.

These acts by the plaintiff and her husband do not indicate to us that there was uncertainty in their minds as to the implications to be drawn from the clause which created the trust fund. We find no proof that during a period of more than four years either

of them intended that fifty shares of Bay Pond, Inc., stock and the dividends therefrom, which Mr. Taber received and dealt with as his own, were a part of the corpus of the trust. It is settled law that " Practical construction by uniform and unquestioned acts from the outset, especially when continued for a long period of time, is entitled to great, if not controlling weight, for it shows how the parties who made the contract understood it. If they do not know what they meant, who can know? Such a construction is presumed to be right, because it was made by the parties themselves when under the influence of conflicting interests." (*Carthage T. P. Mills* v. *Village of Carthage*, 200 N. Y. 1, 14; *City of New York* v. *New York City R. Co.*, 193 id. 543, 548; *Morehouse* v. *Woodruff*, 218 id. 494, 502.) That doctrine has peculiar application here and exerts strong influence upon our decision.

We are not unmindful of the principles announced in *Pierce* v. *Pierce* (71 N. Y. 154), where it was said (at pp. 157, 158): " Courts will not enforce contracts of this nature against the wife where the circumstances establish that she has been over-reached and deceived, or been induced by false representations to enter into a contract which does not express or carry out the real intention of the parties." But in that case the agreement was found to have been induced by fraud. Accordingly it has no application here where we find in the agreement neither ambiguity, which makes uncertain the intent of the parties, nor fraud in its inception. In the case last cited the court was careful to point out in relation to antenuptial agreements that (p. 157): " When fairly made and executed without fraud or imposition, they will be enforced by the courts."

The trial court has also found that " a construction of the antenuptial agreement whereby the plaintiff was to receive merely an annuity of $1,500 a year would be unfair, unreasonable and unconscionable." But in the absence of fraud and ambiguity " We are not at liberty to revise while professing to construe." (*Sun P. & P. Assn.* v. *Remington P. & P. Co.*, 235 N. Y. 338, 346.) " The court cannot substitute a different contract in place of the one actually made because it may think that the plaintiff was unwise in making it." (*Carroll* v. *Title Guarantee & Trust Co.*, 131 App. Div. 221, 223.) " If the language is clear and unambiguous it must be taken according to its plain meaning as expressive of the intention of the parties, and under settled principles of judicial decision should not be controlled by the supposed inconvenience or hardship that may follow such construction." (*Loud* v. *Pomona Land & Water Co.*, 153 U. S. 564, 576; *Schoonmaker* v. *Hoyt*, 148 N. Y. 425, 431.)

In connection with the finding 'by the trial court last quoted above we note from the record that in addition to the annuity, plaintiff's husband made her the beneficiary of life insurance in the amount of $15,000, which was paid in full; and in addition to her income from the trust during their married life he was not ungenerous in his gifts to her of corporate stock. If, despite such provision for the plaintiff by her husband, it shall still be said that the agreement under consideration is unfair, it must be remembered that " generosity is a voluntary attribute and cannot be enforced even by a chancellor." (*Graf* v. *Hope Building Corp.*, 254 N. Y. 1, 4.)

The judgment from which appeal is taken should be reversed on the law and facts, with costs, and the complaint dismissed, with costs. Certain findings of fact and conclusions of law are disapproved and reversed and new findings of fact and conclusions of law made. In view of this determination the appeal by the plaintiff from that portion of the judgment which denies interest upon the award made is dismissed as academic, without costs.

All concur. Present — SEARS, P. J., EDGCOMB, THOMPSON, CROSBY and LEWIS, JJ.

Judgment reversed on the law and facts, with costs, and complaint dismissed, with costs. Certain findings of fact and conclusions of law disapproved and reversed and new findings and conclusions made. Appeal of the plaintiff dismissed, without costs as academic.