EMMA F. SIPPELL, Plaintiff, *v.* J. HAROLD HAYES et al., as Trustees of a Trust Fund Established by WILLIAM D. SIPPELL, Deceased, Defendants.

Supreme Court, Trial Term, Oneida County, April 1, 1947.

*Albert V. Moore* for plaintiff.

*Lyman P. Williams* and *Bert B. Lockwood* for defendants.

MOREHOUSE, J. The plaintiff, Emma F. Sippell, was married to one William D. Sippell of Boonville, New York, now deceased, on August 31, 1931. She was then a widow about fifty-eight years of age with two grown children and had been engaged in teaching school. William D. Sippell was twice a widower with adult children by his first wife, and was then about seventy-four years old. The plaintiff was possessed of some small means and Mr. Sippell was reputed to be worth about $100,000.

On August 29, 1931, two days before the marriage, the plaintiff and her prospective husband entered into an antenuptial agreement in writing accompanied by a trust instrument which was

made a part thereof. The antenuptial agreement recited the anticipated marriage and provided: " Now Therefore, in consideration of such marriage and of the agreements thereby made and the duties and obligations thereby assumed, and of the marriage settlement this day made by the party of the second part by the creation of a certain trust whereby certain securities have been turned over to certain trustees to provide a quarterly payment of $200. to the party of the first part in the event that she becomes the widow of the party of the second part as evidenced by a certain trust agreement, a copy of which is hereto attached and made a part of this agreement * * *." There followed detailed provisions by which each waived all rights to the property and estate of the other, including the right to elect to take as against any last will and testament.

The accompanying trust instrument, executed by William D. Sippell only, named the defendants, J. Harold Hayes and Frederick W. Sippell, as trustees, and both in writing accepted the trust. Certain securities therein listed, then of the par value of $15,000, were set aside in trust to pay the net income to the settlor during his lifetime, " * * * and at his death, providing he shall die prior to the death of Emma Fitch Neiss, whom the said William D. Sippell is about to marry, and that at the time of the death of the said William D. Sippell he shall be the husband of the said Emma Fitch Neiss and shall leave her as his widow, then and in that event the said trustees shall continue to collect the said income from said securities (or the proceeds thereof as hereinafter mentioned) and after deducting their commissions and necessary expenses of administration as aforesaid the said trustees shall pay to said Emma Fitch Neiss-Sippell from the said income annually the sum of Eight Hundred Dollars, the same to be payable quarterly in installments of $200. each in January, April, July and October in each year during the term of her natural life, and the remainder of said income, if any, shall be divided annually between the son and daughter of the said William D. Sippell * * *." There ensued instructions for the disposition of the income and the corpus upon the happening of certain contingencies which are not material to the issues herein.

William D. Sippell died April 12, 1935, and in accordance with the conditions of the antenuptial agreement the plaintiff, Emma F. Sippell, his widow, made no claim to and did not receive any portion of his estate. From time to time, with the consent of the plaintiff and her husband during his lifetime, the trustees exchanged certain of the securities forming the corpus of the

trust in order to produce a higher income. For the years from 1932 to 1934 inclusive the trust funds earned an annual income in excess of $800. In the following years, including the year ending April, 1946, the net income fell short of $800 and the plaintiff has received a total of $2,333.33 less than she would have received at the rate of $800 per annum.

The plaintiff contends that the trust agreement was subject to the antenuptial agreement and that under the terms of the latter she was entitled to receive $800 annually whether or not that amount was earned by the trust funds. She seeks a judgment so defining her rights and interests and directing the payment to her of the deficit in the years since 1935 and the full amount in the future during her lifetime. The defendants assert that the provisions in these instruments confine the benefits to the actual net income from the trust funds.

The trust instrument is expressly made a part of the antenuptial agreement and they are to be construed together (*Blake* v. *Mattern,* 186 App. Div. 488, 492). The plaintiff parted with valuable considerations and waived substantial rights in return for the benefits to be conferred upon her, and the provisions with respect thereto must be construed most favorably to her (*Spencer* v. *Spencer,* 38 App. Div. 403, 408). As an apparent ambiguity exists in the directions for payment to the widow, the intent of the creator of the trust, a party to the agreement, must govern. This may be ascertained from the instruments themselves and from pertinent surrounding circumstances. " The law favors marriage settlements, and seeks to uphold them. * * * It strains, if need be, to the uttermost the interpretation of equivocal words and conduct in the effort to hold men to the honorable fulfilment of engagements designed to influence in their deepest relations the lives of others." (*De Cicco* v. *Schweizer,* 221 N. Y. 431, 439.)

The antenuptial agreement was the primary obligation of the parties and established their respective rights. The trust instrument was merely the agency and security afforded by William D. Sippell to effectuate and insure performance on his behalf. The law will presume that he intended to live up to the terms of his contract. A part of his agreement was " * * * the creation of a certain trust * * * to provide a quarterly payment of $200. to the party of the first part in the event that she becomes the widow of the party of the second part * * *." The plaintiff faithfully observed her corresponding obligations. She married the elderly Mr. Sippell; lived with him as his wife for about five years until his death; and neither made claim

to nor received any portion of his estate — not excepting the statutory widow's exemptions. This constituted full performance upon her part and valuable consideration for the benefit contracted for in return.

The strongest proof that Mr. Sippell intended that his widow should receive $800 per annum absolutely is his express unqualified promise, found in the antenuptial agreement. The trust instrument definitely directs quarterly payments of $200 each. During his lifetime he endeavored to keep the income to that minimum by the exchange and substitution of securities. This procedure reveals that he, as an attorney and businessman, was cognizant of the improbability that the principal would continue to produce the requisite annual income when invested in securities legal for trust funds, a course that would become mandatory after his death. As a man of substance and character he undoubtedly realized and expected to fulfill his moral obligations to provide for his wife financially free from uncertainty; greater obligations than those to his adult children, each of whom had already received from him a gift of $25,000, and the son, as survivor, subsequently inheriting the entire estate free from a widow's statutory rights.

The defendants seek to invoke a rule of practical construction based upon the failure of the plaintiff to take action immediately upon her failure to receive a full $800 per annum. In *Taber* v. *First Citizens B. & T. Co. of Utica* (247 App. Div. 580, affd. 273 N. Y. 539) and in *Seymour* v. *Warren* (179 N. Y. 1) the meaning and construction of written instruments were held to be controlled to some extent by the acts and conduct of the parties to the instruments upon the theory that they were presumed to understand their meaning and purpose. The law imposed no duty upon the widow to commence action against the trustees at the instant of their failure to make full payment in any one year. They could in no way bind her for they were simply the instrumentality by means of which the fund was to be disbursed as directed by the written instruments. Nothing save a statute of limitation can deprive the plaintiff of her rights as established by judicial construction.

Where it is manifest that the intention was to provide payment of a fixed sum to the beneficiary, it is the rule that principal may be invaded to insure full payment in disregard of language which, without its background of circumstances, might impose limitation to the income. In discussing this subject Bogert on Trusts (Vol. 4, § 813, p. 2357) states: " In a given case it becomes a question of interpretation to ascertain which was

the fundamental purpose of the donor. The relationship of the annuitant to the donor, and the presence or absence of a moral claim by donee or donor, are important elements. The court is apt to decree that capital may be used where the annuitant is a widow or other close relative, and those claiming in opposition are remote relatives for whom the testator has shown no concern." (Here the claimant would be the son for whom ample and liberal provision was otherwise made.)

An early but leading authority to this effect is that of *Pierrepont* v. *Edwards* (25 N. Y. 128) where the court, at pages 131 and 134, held: " * * * no positive rule of ready application to every case can be laid down, but that each case will depend upon a consideration of all the material provisions of the will to be construed, and of the extrinsic circumstances respecting the testator's family and estate, which may be fairly brought to bear upon the question of intent. The leading principle of the cases is, that when the testator bequeath a sum of money, or, which is the same thing, a life annuity, in such a manner as to show a separate and independent intention that the money shall be paid to the legatee at all events, that intention will not be permitted to be overruled, merely by a direction in the will that the money is to be raised in a particular way, or out of a particular fund. * * * If we were to hold that the widow was to have nothing, less the property or securities in which the estate happened to be invested yielded income, and that she was not to be paid the full seven thousand dollars per annum, directed to be paid to her, unless the investments should happen to yield that sum, we should, in my opinion, sacrifice the substance and primary intention of the will for the sake of an incidental provision, inserted for the convenience of the estate, and not intended to limit or control, or to render uncertain or conditional, the provision in her favor * * *." This reasoning and authority were followed in 1936 by Surrogate FOLEY in *Matter of Ingraham* (158 Misc. 602).

*Matter of Weir* (172 Misc. 74) the testator's residuary estate was given to his children with the direction to pay his widow $2,500 per year " out of the income thereof ". Surrogate WINGATE in construing this provision stated: " The most that can be said for the position of the opponents of the widow is that the will contains an ambiguity by reason of the language respecting payment ' out of income ' ' in advance,' but granting that such ambiguity exists, it is insufficient to alter the result when the testamentary intent as disclosed by the entire document is borne in mind. The testator obviously desired to provide

a sum, modest in view of his considerable estate, for the support of the widow during life. He tendered and she accepted this in lieu of her statutory rights and if ambiguity exists she is entitled to the most favorable construction which the will can sustain.''

Every fact and circumstance leads to the conclusion that William D. Sippell bargained and intended that his widow should receive $800 per annum from the trust fund without regard to the actual earnings thereof. Consequently, the expression '' from the said income '' as it appears in the trust instrument is inconsistent with his intent and purpose and is ineffectual as a restriction. The plaintiff became entitled to the full amount specified in each year following the death of her husband. It is not important that the payment be termed an annuity as in *Matter of Gabler* (140 Misc. 581) although the effect is the same and such terminology may be adopted for convenience.

This action involves a trust relationship, is equitable in its nature, and therefore subject to the ten-year Statute of Limitation imposed by section 53 of the Civil Practice Act (*Keys* v. *Leopold,* 213 App. Div. 760, 762). Equitable relief may be obtained by means of a declaratory judgment (*National City Bank of New York* v. *Waggoner,* 230 App. Div. 88, 94, affd. 255 N. Y. 527). The statute commenced to run when the defendants failed to make payment of a full $200 at the time the first quarterly installment fell due following the death of the plaintiff's husband, and thus repudiated their trust obligation (*Matter of Deitz,* 134 Misc. 393, 397). Recovery of any payments which became due more than ten years before the commencement of the action is barred.

The plaintiff might have brought successive actions at law under the antenuptial agreement after each quarterly installment became due and failed to equal $200. Had she so elected, the six-year statute specified in section 48 of the Civil Practice Act would have been applicable. Such action or actions would not have afforded her adequate relief and she was not confined to that form of procedure. The existence of other remedies does not preclude the maintenance of this action. (*Commission of Public Charities of Hudson* v. *Wortman,* 255 App. Div. 241; *Emigrant Industrial Sav. Bank* v. *Guarino,* 53 N. Y. S. 2d 122; *Woollard* v. *Schaffer Stores Co.,* 272 N. Y. 304, 311).

This action was commenced September 17, 1946, and the plaintiff is entitled to recover from the trustees, to be paid from the corpus of the fund, the deficit between $200 and the

sums actually paid to her in each quarter commencing with the month of October, 1936. She is further entitled to receive the full amount of $200 on each quarter date hereafter, and if income is insufficient therefor, payment shall be made from the corpus.

Judgment in favor of the plaintiff upon suitable findings in accordance with the foregoing is hereby directed.