JOHN J. CRANLEY ET AL., EXECUTORS AND TRUSTEES (ESTATE OF GUSTAVE SCHIRMER) *v.* GUSTAVE SCHIRMER, JR., ET AL.

SUPERIOR COURT      FAIRFIELD COUNTY      FILE NO. 10147
AT STAMFORD

Memorandum filed September 27, 1967

*Hirschberg, Pettengill & Strong,* of Greenwich, for the plaintiffs.

*Robert E. Morris,* of Stamford, for the named defendant.

*Shipman & Goodwin,* of Hartford, for the defendant Connecticut Humane Society.

*Richard G. Brodrick,* of the New York bar, for the defendant Animal Medical Center.

*Stewart H. Jones,* of Greenwich, for the defendant Mildred Y. Schirmer.

*John J., Edward R.* and *William F. Cranley,* and *Dora Schirmer,* pro se, defendants.

*Benjamin F. Ferris,* of Greenwich, pro se as guardian ad litem for unborn and unascertained persons.

TEDESCO, J. Gustave Schirmer, a very well known musical publisher, died on May 28, 1965, a resident of Greenwich, Connecticut. He left a last will and testament dated October 24, 1962, and a first codicil to said will dated March 9, 1964. These were admitted to probate by the Greenwich Probate Court on June 22, 1965, and John J. Cranley and

William C. Strong were duly confirmed as executors, and later both qualified as trustees.

The testator's heirs at law are his widow, Mildred Youmans Schirmer, and his son, Gustave Schirmer, Jr. On November 19, 1965, Mildred Youmans Schirmer signed her election to take against the testator's will and codicil.

The testator's former wife, Dora Schirmer, has filed a claim under an agreement dated April 30, 1925, that the testator's estate is contractually obligated to pay her $50 each week until her death or remarriage. The will of the testator confirmed the provisions of the separation agreement and directed the payment of the sums claimed by his former wife.

The landlords of a duplex apartment in New York City have filed a claim based upon a lease for said apartment executed by the late Gustave Schirmer, which lease expired on September 30, 1966, and which lease was executed for the testator's son. The testator directed payment of his son's rent on said apartment. He directed that such payment be made out of income. The trustees desire to renew said lease made for Gustave Schirmer, Jr.'s benefit.

The will and codicil thereto provide that the residuary estate be held in trust and that after payment of certain expenses one-half of the remaining income, called part A, be paid to decedent's widow, Mildred Youmans Schirmer, or, if she is deceased or remarried, then such income is payable to John J. Cranley, or, if he is deceased, one-half of such income is payable to the Connecticut Humane Society and one-half to the Animal Medical Center. The remaining one-half of the income, called part B, is to be paid to the decedent's son, Gustave Schirmer, Jr., or accumulated in the discretion of

the trustees, or, if he is not then living, the income is paid to John J. Cranley, or, if he is also deceased, then to the issue of Gustave Schirmer, Jr., or in default of issue one-half to the Connecticut Humane Society and one-half to the Animal Medical Center. Article fourteenth of the will, as it appears in the codicil thereto, provides that upon the death or remarriage of the decedent's widow and the death of his son, the trust created by article thirteenth shall terminate and the principal thereof is to be paid, one-half to John J. Cranley or, if he is not then living, to his sons and to the issue of a deceased son, per stirpes, and the remaining one-half to the issue of the decedent's son, Gustave Schirmer, Jr., or in default of issue one-half to the Connecticut Humane Society and one-half to the Animal Medical Center.

The questions asked are as follows:

(1) Are the payments to Dora Schirmer under the inter-vivos trust agreement a debt owed by the estate in its entirety and chargeable to principal?

The payments to the testator's former wife, Dora Schirmer, are chargeable to the principal and are claims against the estate in its entirety.

(2, 3 and 4 [combined]) Are the payments made or to be made under the existing lease, a renewal thereof, or any other lease for the benefit of Gustave Schirmer, Jr., to be paid from the principal as well as the income of the testamentary trust?

The payments to be made both under the existing lease and any renewal thereof or any other lease for the benefit of Gustave Schirmer, Jr., are chargeable to income insofar as the income is sufficient, and if the income is insufficient, then the principal shall be invaded to make said payment. The principal payments are claims against the estate.

"The wording of each instrument, and the circumstances surrounding the settlor and his beneficiaries, must be examined carefully for any evidence as to the trustor's wishes. The relationship of the annuitant to the donor, and the presence or absence of a moral claim by donee on donor, are important elements. The court is apt to decree that capital may be used where the annuitant is a widow or other close relative, and those claiming in opposition are remote relatives for whom the testator has shown no concern." Bogert, Trusts and Trustees (2d Ed.) § 813, pp. 239–41, and see cases cited therein at p. 241 (particularly *MacMackin's Estate*, 356 Pa. 189, 195 [1947]). The *MacMackin* case also confirms the proposition that in the absence of an express restriction, or its equivalent, the corpus of an estate given subject to an annuity may be taken for its payment when the income proves insufficient for that purpose.

"Even though there is no express provision for the payment of principal to the income beneficiary, if the welfare of the income beneficiary is shown to be a primary concern of the testator courts sometimes have implied a power in the trustee to distribute trust principal to the income beneficiary." Bogert, op. cit. § 182, pp. 236–37 & n.35. Bogert also says: "The power to apply capital of the trust to aid the cestui is often implied from the expression of a strong desire to confer benefits on a cestui who has a moral claim on the settlor or other circumstances." Id. § 812, p. 226 *(Shepard v. Shepard*, 57 Conn. 24, 30 [1889], is cited for this proposition by Bogert § 812 n.92, p. 227).

"Whether and under what circumstances and to what extent a beneficiary who is entitled to receive the whole or a part of the income from the trust estate is entitled also to receive a part or the whole of the principal depends upon the terms of the

trust. Where it is provided in the trust instrument that the income shall be paid to or applied for the support of a beneficiary, with a gift over of the principal on his death to another beneficiary, the income beneficiary is not ordinarily entitled to any part of the principal nor has the trustee power to pay to him or apply for his benefit any part of the principal. But where the support of the income beneficiary appears to have been the primary purpose of the settlor, the court may permit the trustee to apply principal for the necessary support of the income beneficiary although no power to invade the principal was expressly conferred by the terms of the trust." 2 Scott, Trusts (2d Ed.) § 128.7 & nn.1, 2, 2a; see *Johnston's Estate,* 264 Pa. 71, 76 (1919); *Sippell* v. *Hayes,* 189 Misc. 656, 661 (N.Y. 1947).

In *Mitchell* v. *Wyckoff,* 122 Conn. 48 (1936), article twelfth of the testatrix' will left two-thirds of the income from the residue payable to her son in the discretion of the trustees, "but in no case shall such payment be less than four hundred (400) dollars per month." A-94 Rec. & Briefs, back of p. 368. It was held that "from the express language of this paragraph considered with reference to the other parts of the will and the circumstances surrounding the testatrix at the time the instrument was made, it was clearly her intention that . . . [her son] in any event should receive $400 a month from the residuary estate. . . . [I]n case the income is not sufficient to pay him $400 a month, he is entitled to such payment out of the principal of the residuary estate." *Mitchell* v. *Wyckoff, supra,* 63.

It has been said that "annuity is variously defined and not always with precisely the same meaning." *Strakosch* v. *Connecticut Trust & Safe Deposit Co.,* 96 Conn. 471, 491 (1921). See also *Bartlett* v. *Slater,*

53 Conn. 102, 107 (1885), where it is said to be " 'a yearly payment of a certain sum of money granted to another in fee, or for life, or for a term of years, charging the person of the grantor only.' " As the court said in *Sippell* v. *Hayes,* supra, 663, "[i]t is not important that the payment be termed an annuity . . . although the effect is the same and such terminology may be adopted for convenience."

In *Russell* v. *Hartley,* 83 Conn. 654, 660 (1910), it is said: "Judicial authority in the verbal interpretation of one will can rarely be of great weight in the construction of another, for the intention of each depends upon its own terms and its own setting, and no two are identical. At best, adjudications serve as illustrations of the application of established principles to special cases. The principles of the precedents control; the facts of the precedents do not."

(5) Is that portion of income of the trust designated as part A now payable to John J. Cranley, and upon his death shall the same be paid as therein provided?

This question involves the problem whether or not a widow exercising her right to election accelerates a successor interest limited on her death. The weight of authority permits an acceleration of a successor interest when the surviving spouse has elected against the will.

The New York courts generally allow an acceleration of the remainder interest, after the election of a surviving spouse, to the named remainderman in the testator's will. *Matter of Austin,* 50 Misc. 2d 972 (1966); *Matter of Heede,* 29 Misc. 2d 103 (1961); *Matter of Haubenstock,* 28 Misc. 2d 714 (1961); *Matter of Lunney,* 21 Misc. 2d 455 (1959); *Matter of Taliento,* 9 Misc. 2d 167 (1957); *In re Wiener's Will,* 228 N.Y.S.2d 190 (1962).

In *American Trust Co.* v. *Johnson,* 236 N.C. 594 (1952), the court discussed the doctrine of acceleration at length. In particular, it enumerated two situations in which a remainder interest would not accelerate: (1) where the identity of the remainderman is in doubt; and (2) where an acceleration is clearly contrary to the intent of the testator. The court further observed (p. 598) that as far as the remainderman is concerned, the election of the surviving spouse is tantamount to her death: "The primary purpose of the testator in giving the residue of his estate to his wife for life, was to make available to her during her lifetime the entire income therefrom; and the distribution among ultimate takers was only postponed in order to effect the primary purpose. This primary purpose having been defeated by the widow's dissent, the ultimate takers are entitled to come into the immediate enjoyment of their rights under the will to the same extent as if the widow had died subsequent to the date of her dissent."

There is a 1924 decision rendered by the Supreme Court of Connecticut where acceleration of a remainder in an election contest was not permitted unless the statutory share was less than the spouse's testamentary interest. *Farmers' Loan & Trust Co.* v. *McCarty,* 100 Conn. 367 (1924). The *McCarty* opinion is, however, distinguishable from the present case. In *McCarty,* the remainderman's share under the will was an absolute interest in the corpus of the testamentary trust, whereas the share of Cranley presently in dispute is an interest in income, not principal. The court in *McCarty* did not permit acceleration of the remainderman's interest after the widow's election because there were three remaining beneficiaries of the trust entitled to income. If the court had allowed an acceleration of the remainderman's interest, the remainderman

would have enjoyed a portion of the principal of the trust while the other beneficiaries were merely obtaining income therefrom. To divide the residue of the estate in this manner, according to the court, would cause "fresh complications."

That complexity does not exist in the case at bar. Cranley's interest in the part A portion of the testamentary trust is a share of income, as is the interest of the other beneficiary—Gustave Schirmer, Jr. As the secondary beneficiary, Cranley will be receiving the same type of interest as that to which the remaining beneficiary is entitled. No real complications are likely to flow from such an arrangement. Inasmuch as Cranley is the choice of the testator to take part A income upon the death of Mildred Youmans Schirmer, it will not disturb the testator's intent if Cranley succeeds to this same interest at an earlier date owing to the election of the surviving spouse. *Shannon* v. *Eno*, 120 Conn. 77 (1935). The election of the widow is construed by this court to be equivalent to her death, as it so frequently is in other jurisdictions today. Consequently, her testamentary share—in this case trust income—should then be paid to her successor in interest, John J. Cranley. "[E]ven where the trust is declared to continue for the lifetime of the widow and another and of the survivor of them, the election of the widow to take against the Will accelerates the remainders by that much, entitling beneficiaries to distribution on the death of the other." 97 C.J.S., Wills, § 1293, p. 166.

It is to be distinctly understood by all parties concerned that although acceleration is being permitted to allow John J. Cranley presently to accept benefits of the trust, the interest of the widow, Mildred Youmans Schirmer, is not to be diminished in any manner. The cases and text refer to the fact that if acceleration is allowed after the widow's

election, she is considered dead. In this case, however, if she is considered to be dead, and distribution of the corpus is requested, the trustees are hereby ordered to ensure that no part of the widow's interest is diminished because of the court's ruling on acceleration.

(6) Is that portion of income designated as part B, payable to John J. Cranley upon the death of Gustave Schirmer, Jr., if living, or, if he is also then deceased, to the beneficiaries in accordance with the provisions thereof?

That portion of income designated as part B shall be payable to John J. Cranley upon the death of Gustave Schirmer, Jr., if living, or, if he is deceased, to the beneficiaries in accordance with the provisions thereof.

(7) Is the principal under article fourteenth in said will as amended by article second of said first codicil payable upon the death of Gustave Schirmer, Jr., as therein provided?

The principal under article fourteenth is payable upon the death of Gustave Schirmer, Jr., since the election of Mildred Youmans Schirmer, the widow, against her husband's will eliminates her as a measuring life in the continuation of the trust.

(8) Is the statutory share of Mildred Youmans Schirmer to be computed before or after death taxes, and should that portion of said taxes allocable to said statutory share be deducted therefrom in computing the actual net amount of her statutory share?

The widow's share is to be computed before deduction of the Connecticut succession and estate taxes and all other taxes, but her statutory share is to be charged with that portion of taxes allocable thereto.

In the succession tax return filed in *Farmers' Loan & Trust Co.* v. *McCarty,* 100 Conn. 367 (1924), the executors first determined the gross taxable estate and then subtracted deductions and losses to arrive at a net taxable estate. The wife's elective share was then computed from the net taxable estate. Taxes were then assessed on the net taxable estate and prorated against such legatee's share. The solution in *McCarty* was both logical and equitable. If the widow's share had been computed after subtracting the total amount of succession taxes, the treatment would have been contrary to the spirit of the Connecticut proration statutes (General Statutes §§ 12-376, 12-401), which were enacted as remedial provisions designed to circumvent instances of hardship which resulted when residuary legatees were saddled with the entire tax. *New York Trust Co.* v. *Doubleday,* 144 Conn. 134, 140 (1956).

Section 46-12 of the General Statutes provides in part as follows: "On the death of a husband or wife, the survivor shall be entitled to the use for life of one-third in value of all the property, real and personal, legally or equitably owned by the other at the time of his or her death, after the payment of all debts and charges against the estate . . . ." The question for determination here is whether the word "charges" as used in the statute includes federal estate taxes and Connecticut succession taxes.

At an early date in our judicial history, the Supreme Court commented briefly on the meaning of the term "charges." In *Goodwin* v. *Chaffee,* 4 Conn. 163 (1822), the court was concerned with the question whether a legatee could compel the sale of a decedent's real estate under an 1808 statute (Statutes, 1808, p. 269, § 22) which provided for such a sale in order to pay the excess of debts and

charges beyond the personal estate. The court stated (p. 166): "[A] legacy is not a debt, nor is it a charge, within the meaning of the statute. The latter term has, from familiar use, the precision of a technical term, and merely comprises the expences incurred in the settlement of an estate." The concept of "charges" as meaning merely administration expenses was confirmed in *Bankers Trust Co.* v. *Greims,* 110 Conn. 36 (1929), where a husband had elected to take against his deceased wife's will and the court was called upon to determine whether foreign realty should be included in the husband's statutory share. In holding that foreign realty should not be included, the court stated (p. 40) that the husband's statutory share should be computed "from the net total of the estate, less debts and administration charges, as inventoried in the Court of Probate."

There was a time in Connecticut when, for the purpose of determining the value of a net estate for succession tax purposes, federal estate taxes were considered deductible administration expenses. The succession tax statute of 1915 (Public Acts 1915, c. 332 § 5) provided: "The net estate for taxation purposes shall be ascertained by adding to the appraised value of the inventoried estate all gains made in reducing choses in action to possession, except income accruing after death, and deducting therefrom the amount of claims paid, all funeral expenses and expenses of administration." In construing this provision in *Corbin* v. *Townshend,* 92 Conn. 501, 506 (1918), the Supreme Court held: "Any expense arising by operation of law which is a charge against, or must be paid out of, the estate, is an administration expense within the meaning of this term as used in § 5 of the Act of 1915. The payment of the Federal [estate] tax is an expense of the estate, as much so as any expense of adminis-

tration." The 1915 succession tax statute has since been amended and now, as expressed in § 12-351 of the General Statutes, specifically excludes federal estate taxes as a deductible expense in the computation of a decedent's net estate for succession tax purposes.

With respect to the Connecticut succession tax, it is the settled law that the tax is upon a beneficial succession or transfer and is levied only on that portion of the estate which passes to the transferee. *Corbin* v. *Townshend,* supra; *Gallup's Appeal,* 76 Conn. 617, 625 (1904); 3 Locke & Kohn, Conn. Probate Practice § 15.

In the case of a surviving widow's elective share, the Connecticut succession tax would be levied upon the transfer to the widow of the share to which she is entitled pursuant to § 46-12. By virtue, however, of § 12-351, federal estate taxes are specifically nondeductible in computing each beneficiary's share for the purposes of the Connecticut succession tax. It is therefore clear that federal estate taxes would not be a deductible "charge" under § 46-12 in computing the value of the widow's share for succession tax purposes.

Mildred Youmans Schirmer, having elected as widow to take against the will, has no concern with questions as to whether certain testamentary dispositions are chargeable to principal or to income or as to when or to whom certain testamentary dispositions are to be made. It should be borne in mind, however, that § 46-12 provides that the widow's statutory share "shall not be defeated by any such disposition of the property by will to other parties." Accordingly, whatever the determination shall be on these questions raised by the executors, such determination should in no way operate to

reduce arithmetically the share to which the widow is entitled under § 46-12.

The court will not settle, at this time, the question as to the expenses and counsel fees for the several parties, having in mind that the income of the estate is not sufficient to pay the obligations to the beneficiaries.