James A. Delehanty, S.
An application is here made by the surviving spouse of deceased for a determination of the validity and effect of his election to take against the will of his deceased wife. In answer to his application the executor sets up as a bar to the claim of right to elect a document executed and acknowledged by deceased and petitioner on October 17, 1939. The parties stated orally upon the record of the hearing that there were no controverted issues of fact. In the brief of petitioner he refers to the document relied upon as a bar by the executor and says: ‘ ‘ The validity and construction of this last mentioned paper writing therefore is at this time the sole issue before the court * * *. It is the contention of the petitioner that such paper writing is legally insufficient to constitute a waiver of his right of election ”. On this state of the record the court conceives the parties to have submitted the matter for decision on a factual basis not in dispute; and that included in the facts deemed established is the fact that the document set up in the answer of the executor was executed by deceased and petitioner and was acknowledged by them on the day specified therein. The court understands that it is also agreed between the parties that petitioner intermarried with deceased after September 1, 1930 and that the recitals in the *552 document in controversy as to prior marriages and the birth of issue are deemed established. The will here in question is dated April 1, 1940, several months after the document. If these recitals do not correctly report counsels’ agreement on the facts the court should be so advised promptly and, if need be, proof of any disputed fact will be taken.
The pertinent text of the document in issue says:
“ Agreement, * * *
‘ ‘ Whereas, the parties hereto have each previously been married and each have children by a prior marriage, and
‘1 Whereas, the party of the first part is desirous that her children shall inherit her property, and the party of the second part is desirous that his children shall inherit his property, and
‘ ‘ Whereas, the parties hereto mutually agree to waive any and all interest in and to the estate of the other,
“ Now, Therefore, it is mutually agreed:
“ That the parties above named, in consideration of the sum of One and no/100 ($1.00) Dollar, lawful money of the United States, and other good and valuable consideration, to each in hand paid by the other, the receipt whereof is hereby acknowledged, each party for herself and himself, hereby renounces and releases to the other party, his or her heirs and assigns forever, all and any right, title and interest, or right of dower, in any property, both real and personal, that said parties may now be seized of or that they may hereafter acquire.”
The quoted text is alleged to fail to meet the requirements of subdivision 9 of section 18 of the Decedent Estate Law. Counsel’s argument as to those requirements points up the problem and makes clear the issue. He says that subdivision 9 speaks of three types of instrument or agreement. The first of these, he says, is a waiver, by instrument executed after September 1, 1930, of right to take against a particular will. The second of these, he says, is a waiver, by agreement made after September 1, 1930, of right to take against any will. The third and last of these, he says, is an agreement made before September 1, 1930. Counsel develops his argument by asserting a legislative intent to deny to either an instrument or an agreement executed after September 1, 1930, any operative effect as a waiver of election if it merely waives or releases rights in the estate of the spouse but does not mention the word will. His contention is that only in an agreement executed before September 1, 1930, will general text be effective as a release of a right of election. Petitioner’s counsel also attacks the effectiveness of tl*e document by denying to the recitals ip the writing *553 any contractual effect. Thus the court must, first determine the area within which the document operates and then must determine whether the document so construed meets the test of the statute as an operative waiver of petitioner’s asserted right of election.
When the document is considered in the light of its recitals, it must be held that it states the intention and agreement of each party thereto for himself to surrender all choate and inchoate rights in the property of the other party thereto not only in respect of what each then owned but also in respect of what each might thereafter acquire. While it is said that recitals in a contract form no part of it (Ross v. Ross, 233 App. Div. 626, 635) such recitals may be resorted to as indications of the intentions of the parties and the scope and meaning of the agreement (Maloney v. Iroquois Brewing Co., 173 N. Y. 303, 307). Here the last recital is in form an agreement. There is no reason why it cannot be so considered. If it and the other recitals are regarded merely as declarations of intention and scope such declarations leave no doubt as to the coverage intended for the renunciations and releases which are interchanged by the text. At the time the document was signed the right to elect against a will had long been the established law of the State. There is present therefore no such problem in the interpretation of the paper as that discussed in Matter of McGlone (284 N. Y. 527, affd. sub nom. Irving Trust Co. v. Day, 314 U. S. 556). The document is held to be sufficiently broad in its text to operate as a renunciation and surrender by petitioner of all interests in the property of his now deceased wife; unless some provision of subdivision 9 of section 18 of the Decedent Estate Law requires the court to hold the paper inoperative according to its tenor.
The controversies which have arisen concerning the true meaning of the text of subdivision 9 of section 18 of the Decedent Estate Law are largely due to its inexact language. In referring to the waiver of a right to take against a particular will the subdivision uses the word “ instrument ”. When it refers to a waiver of right to elect against any will the subdivision uses the word “ agreement ”. When referring to the waiver of right against a particular will the text is set off by a comma from the remainder of the sentence relating to any will; and in the remainder of the sentence the “ agreement ” is referred to as one which might be “ made before or after marriage.” No explicit reference is made to the time of the ‘ ‘ instrument ’ ’ which is declared to operate against a particular will. The use of a comma before the disjunctive “ or ” ordinarily would *554 indicate an intention to discriminate the first half of the sentence from the second half. Here it is more probably a mere misuse of a comma. But the use of this punctuation mark left open the query whether in respect of a particular will the waiver must be by “ instrument ’ ’ after marriage, the right to elect being granted only to a spouse. The final sentence in the subdivision says nothing about a will, whether ‘1 particular ’ ’ or “any”, but speaks only of “rights in the estate.” This sentence expressly says that such a release of rights in the estate “ shall be deemed” a release of the right of election if made in an “agreement” executed “before the taking effect ” of the section. As already noted, the text in the prior sentence refers to an “ agreement ” made before or after marriage. It is not surprising that such inexactness of expression has given rise to professional controversy as to what the Legislature meant to prescribe.
In a search for the legislative, as distinguished from the draftsmen’s intent it is appropriate to look at the legislative documents which preceded the enactment of subdivision 9 of section 18 of the Decedent Estate Law as it now exists; and to look also at the public declarations of members of the commission which no doubt constituted a part of the general body of information upon which the Legislature acted. The Commission to Investigate Defects in the Law of Estates was the creation of the Legislature. (L. 1927, ch. 519.) Its membership included four Surrogates, a number of legislators and some members of the general public. In its original report to the Legislature of 1928 (N. Y. Legis. Doc., 1928, No. 70) a group of proposals was submitted which included a proposed section 18 of the Decedent Estate Law having in it no subdivision 9. It is apparent from the speech of Surrogate Slater delivered at the meeting of the New York State Bar Association on January 18, 1929 (see combined Report of Decedent Estate Comm., Reprint, pp. 161-174), that the presentation of the legislation proposed in 1928 was designed to elicit bar and public opinion respecting the general tenor of the program. He said (p. 163): “The report of the Commission was made to the legislature in 1928, with an accompanying bill to be introduced for the purpose of securing printed copies for distribution. The bill was not pressed for passage, as it was deemed desirable to have it widely circulated and considered. Bar associations, courts and lawyers were invited to criticise and offer suggestions.” Surrogate Slater spoke of the holding of public hearings in the fall of 1928 and of the revision of the original proposals and of the presentation in 1929 of a revised bill which the commission *555 pressed for enactment into law. These new proposals were appended to Legislative Document No. 62 of 1929 and here for the first time a subdivision 9 is proposed to be included in section 18 of the Decedent Estate Law. As proposed in 1929 it says:
“ 9. The husband or wife during the lifetime of the other may waive the right of election to take against a particular last will and testament by an instrument subscribed and duly acknowledged, or may waive such right of election to take against any last will and testament of the other whatsoever in an agreement of settlement so executed, made before or after marriage.”
To the new section 18 generally there was appended a legislative note which discussed the general purpose of the newly granted right of election, the limitations on the right, the disqualifications which would bar election, the jurisdiction of the Surrogate in respect of issues arising under a claimed right of election and the personal nature of the election. The note to the 1929 legislation says nothing whatever about subdivision 9 or about a waiver.
At this point it is needful to call attention to the phrase — “ an agreement of settlement ” — which is in the original 1929 text just quoted. Careful search in th e encyclopaedias, the law dictionaries, the American Digest System and Words and Phrases fails to disclose any case which treats the phrase “ an agreement of settlement ” as having any distinctive connotation. The bar was fully aware of course of marriage settlement agreements and of antenuptial agreements and of separation agreements; but it had no guidepost to enable it to determine what the draftsmen meant when they referred to “an agreement of settlement.” The phrase squints perhaps at an agreement between husband and wife but it was apparently used by the draftsmen as if it had a fixed meaning for the profession. The profession apparently repudiated that assumption because as now to be noted the phrase was changed.
The body of legislation first enacted (L. 1929, ch.. 229) contained provisions respecting its effective date and its operative area. It was not to take effect in any respect until September 1, 1930. The reason for this delay is stated in the final legislative note of 1929 wherein the commission stated that its general purpose was to defer the effective date “ in order to permit attorneys and the public to become familiar with the nature of these changes.” In its first supplemental report (N. Y. Legis. Doc., 1929, No. 62) the commission reported that the bulk of *556 suggestions for changes in the 1929 act made at hearings and in correspondence were directed toward the provisions for the right of election of a surviving spouse. In this report the commission notes a substantial revision downward of the originally proposed absolute right to take a cash sum from the estate. Nothing is said in the report about the matter of waiver. In the second supplemental report (N. Y. Legis. Doc., 1930, No. 69) the commission again referred to professional and public queries about the right of election hut said nothing about waiver other than to refer to the Massachusetts statute. When that statute is looked at however (Combined Reports of Decedent Estate Comm., Reprint, pp. 139-140) it will be seen that the reference in it to “ waiving any provisions ’ ’ is used in the sense of electing against the will. The waiver there referred to is not a waiver of a right of election but a repudiation of the provisions of the will. The first reference to a waiver such as our statute provides for is found in the speech which Surrogate Slater- — a member of the commission — made to the State Bar Association in 1929. He said (Combined Reports of Decedent Estate Comm., Reprint, p. 167): “ Some attorneys appear shocked that a surviving spouse will receive one-third or one-half of an estate extending into the millions. The husband and wife have probably lived on a basis of income produced from such millions. Experience has shown that the rich man is generally just to his wife. Should husband, or wife want differently, an ante-nuptial, or post-nuptial, agreement could be entered into. Owners of great wealth usually employ learned attorneys to advise them.” In the same speech Surrogate Slater referred to a communication which the commission had addressed to a Judge of the Orphan’s Court in Philadelphia respecting the operation there of the right granted by Pennsylvania law to elect against a will. The answer of the Orphan’s Court Judge is reported thus (p. 171): “ The fact is that these statutory provisions act as a general form of marriage settlement suitable in the great majority of cases. If they do not suit, people intending to marry may, with proper care, make their own ante, or post, nuptial agreements.” The speech which the chairman of the commission made to the New York State Bar Association on January 20, 1928 (Combined Reports of Decedent Estate Comm., Reprint, pp. 145-148) makes evident (p. 157) that the commission was largely influenced by the Pennsylvania legislation and by the actual operation of the right of election under the statute of that State, though recommending greater protection to the testamentary ¡scheme than the Pennsylvania statute gave.
*557 With these faint glimpses of the background against which the phrase “ an agreement of settlement ” was originally used and with this background of bar and public questioning of the new right proposed to be granted to spouses we find that after the 1929 legislation had been put on the books some changes were initiated by the commission itself at the 1930 legislative session. The Legislative Document No. 69 of 1930 already referred to says (Reprint, p. 289) that “ Proposed legislation to clarify the act accompanies this Second Supplemental Report. Notes have been inserted which explain in detail the character of the amendment proposed to each section and the intent of the Commission as to the effect thereof ”. The first change so proposed became chapter 174 of the Laws of 1930 and it amends subdivision 9 of section 18 of the Decedent Estate Law. As proposed to the Legislature the amendment provided for bracketing out the words “ of settlement ” in the phrase “ an agreement of settlement ”, It proposed the addition of the following sentence: ‘ ‘ An agreement so executed made before the taking-effect of this section wherein a spouse has waived or released all rights in the estate of the other spouse shall be deemed to release the right of election granted in this section. ’ ’ The proposed excision of old text and the proposed addition of new text (accomplished by L. 1930, ch. 174) created subdivision 9 of section 18 of the Decedent Estate Law as we now know it. To the 1930 proposed legislation there was appended a legislative note (Combined Reports of Decedent Estate Comm., Reprint, p. 293) which said: “ Note: This amendment is made so as to include a separation agreement or an agreement in a trust inter vivas as well as an agreement of settlement.” It is noteworthy that the text of the statute says nothing about “ a separation agreement ”, nothing about “ an agreement in a trust inter vivas ” and that it expressly eliminated the words “ of settlement ” though the note reiterates the phrase “ an agreement of settlement.”
The background of professional concern respecting the operation of the legislation enacted in 1929 probably furnishes an adequate explanation for the phrase now in the final sentence of subdivision 9 of section 18 of the Decedent Estate Law,- — • “made before the taking- effect of this section.” It probably furnishes also an adequate explanation of the text which speaks of “ all rights in the estate ” rather than of a will. It seems clear from the legislative history of the act that the profession was concerned with the problems that would arise if the newly granted right were to upset long-established family arrangements. The bar was gravely concerned respecting the effect of *558 a codicil executed after August 31,1930. It was finally advised that such a codicil would operate to give rise to a right of election no matter how trifling the change made by it. That advice made gravely important the validity of agreements that had been entered into prior to September 1, 1930 in which the parties undertook to affect or to control the participation of a surviving spouse in the estate of a deceased spouse. Such prior agreements would often say nothing in terms about a will but would speak of interests in the estates of the parties'. If they were to be invalidated by the new act the profession had in prospect the drafting of a multitude of new wills prior to September 1, 1930, with all the problems which might arise therefrom. The commission and the Legislature tried to satisfy the profession and the public on these points by taking out the words “ of settlement ” in the phrase “ an agreement of settlement ’ ’ and by saying that any agreement executed before September 1, 1930, which in terms waived or released rights in the estate of a spouse should be deemed to release the right of election granted by the section. These changes were quite generally understood to have quieted the fears of the profession and to have met the problems which the profession envisaged by reason of its knowledge of family agreements executed prior to the effective date of the. new statute. It was not until lawyers were confronted with actual controversies and were compelled to study the text of the statute that there arose questions as to what was the actual meaning of the legislation. The lack of symmetry in the subdivision was at once apparent. Much skill in dialectic has been expended since 1930 in attempts to convince the courts that the Legislature had in mind and had established clearly defined categories within one or the other of which the paper claimed to be a waiver must fall if it were to be effective. It is clear from the legislative background just recited that there was no thought of precise categories in the mind of the Legislature and that the original text of the subdivision as well as the deletion therefrom and the accretion thereto were responsive to stimuli from without and imported no spontaneous opinion of the Legislature or the commission.
The analysis which follows develops the attitude of the courts toward contentions based upon the wording of the subdivision under consideration. The cases discussed appear to be the entire body of reported case law on the subject. Reference is made to the year in which the controversy first arose so far as indicated by the reports, so that the development of judicial thought will be understood.
*559 In Matter of Gilmour (146 Misc. 113) a written separation agreement dated June 4, 1920 was followed by a divorce in another State to the jurisdiction of which both parties submitted themselves. After such divorce both parties remarried. Whether the separation agreement was acknowledged does not appear from the report. The court held that it operated to revoke a will in favor of the then wife of deceased and that it operated to release all her claims “ as his wife and widow”. She was denied letters of administration because not a party interested in the estate. The result would seem to be supported so far as her status as widow is concerned by the recent decision in Matter of Holmes (291 N. Y. 261).
In Matter of Tierney (148 Misc. 378, 381) the will in issue was dated November 11, 1929. The marriage of the testator occurred September 16, 1930. He died December 12, 1931. The question was whether or not the widow could claim a widow’s share on the basis that the will was revoked by the later marriage. The testator and his wife executed a separation agreement on February 10, 1931 in which each of the parties contracted that the other should have “ full power to * * * dispose of [his or her] property in [his or her] lifetime or by his last will and testament as fully and effectively as if he were unmarried ’ ’. The agreement was held sufficient to bar the widow from any share in the estate.
In Matter of Leger (147 Misc. 286) the death occurred March 22, 1931. A codicil had been executed by deceased on October 9, 1930. The widow filed an election to take her intestate share. She was entirely without resources. From the date of deceased’s death the executor had paid her over $2,400 for her maintenance and support. The executor argued that this constituted an acceptance of the terms of the will and invalidated the election. The court held that payments made thus for an impecunious spouse did not constitute a waiver of the right of election.
In Matter of Brown (153 Misc. 282) the death occurred April 14, 1933. Codicils were executed after August 31, 1930. The husband and wife had executed a separation agreement in 1910 and had lived apart thereafter. In the agreement the wife contracted not to sue her husband for maintenance and she purported to quitclaim her dower right to him whether in property then owned or thereafter acquired by him. No real property in fact was owned by deceased. The opinion discusses various cases dealing with separation agreements. The court held that the tenor of the agreement did not suffice to bar her right of election.
*560 In Matter of Loeb (155 Misc. 863, 864) the will in issue was executed January 22, 1933. In March, 1933 an acknowledged separation agreement was made between deceased and her husband which provided ‘1 that each shall have the right to dispose of his or her property by Last Will and Testament or otherwise, and that he or she will not claim any interest in the other party’s property, except as provided in this agreement * # * excepting that the wife may claim such property or sums of money or benefits as the husband may voluntarily make for her in his Last Will and Testament ”. The court held the agreement a bar to the husband’s claim of right to elect against the will. The opinion cites Matter of Cook (244 N. Y. 63). The cited case deals with an interchange of letters and holds the interchange to have worked an effective agreement not to contest a will (pp. 69-70).
In Matter of Shapiro (154 Misc. 55, 57) the deceased with his prospective bride had visited a lawyer who drew and explained to both parties an antenuptial bilateral agreement which they executed and acknowledged on June 16, 1931 prior to their marriage. The will in controversy was made on June 15, 1931. In the antenuptial agreement the prospective wife accepted $500 “ in place and stead of all rights, which, as widow, [she] might otherwise have * * * as a distributive share of the personal property under any statutes now or hereafter in force or effect.” The prospective husband on his part contracted that the $500 liability should be a first charge upon his entire estate. The Surrogate’s opinion discusses the text of subdivision 9 of section 18 of the Decedent Estate Law and says in terms that the types of writings defined in the subdivision “ are obviously of two varieties.” (P. 58.) He held the agreement to be an effective bar to an election by the surviving widow. The case appears not to have been appealed but it was cited with approval in Matter of Denison (255 App. Div. 294).
In Matter of Sachs (155 Misc. 233, affd. 246 App. Div. 546) the agreement was a written and acknowledged separation agreement dated March 27, 1929. It provided that the petitioning husband would transfer certain property to the deceased and that she could retain whatever movable personal property she then had in her possession free of any claim thereto by the husband. In it deceased released and discharged petitioner from any claims of hers against him. No similar clause of release by the petitioning husband was contained in the agreement. It was held that the agreement did not constitute a *561 waiver by the husband under subdivision 9 of section 18 of the Decedent Estate Law and the court directed an account as a preliminary to his election.
In Matter of Smith (243 App. Div. 348, 351-352) there was under review a decree of the Chautauqua County Surrogate made on July 31, 1934, which had denied to a surviving widow a right of election. On July 28, 1925 a judgment of separation had been entered between the spouses. The parties adjusted their differences thereafter and apparently went through a needless second marriage ceremony in the fall of 1926 and thereafter lived together until the death of deceased. It appears from the report that while the separation action was pending and four days before the decree was granted a sum of $500 was paid to the wife in consideration of which she executed to her husband a general release. On the same day she gave her husband a purportedly irrevocable power of attorney authorizing him to execute in her name any deed or transfer of her dower rights. Later the parties on October 4, 1928 executed and acknowledged a written instrument by the terms of which each released the estate of the other from their respective ‘1 right of inheritance or dower or set-off of exempt property to the end that the heirs of each may take all of the property of which either dies seized and possessed either by will or inheritance without any claim being made by the other in any name or nature whatsoever.” Particular reliance was placed upon this instrument as an effective waiver of the widow’s right of election. The court noted that the right of election did not exist when the paper was executed and says: “ That fact alone, however, does not make the instrument inoperative as a release or waiver of appellant’s right.” The court goes on to say that if the release was the free act of the widow and if it was clear and certain that it was her intention to relinquish all rights in her husband’s estate “ then, undoubtedly, the instrument will prevent her from taking advantage of her statutory privilege of election, even though that right did not exist at the time of the execution of the release.” The appellate court held on the facts that the last discussed instrument was procured by fraud and deceit practiced on the widow and hence held that it was void and ineffective as a release of a right of election. It reversed the Surrogate’s contrary conclusion and remitted the matter for proper action in the court below. The appellate court held that the release executed in 1925 did not extinguish the right of election and held further that the power of attorney of the same date was void since it *562 was intended as a method for release of- dower and was ineffective because a wife under coverture could not release her dower interest directly to her husband.
In Matter of McCann (155 Misc. 763, 767, 768) the court considered an election filed by a surviving husband against his wife’s will. The assets of the latter reported in the account appear to have consisted of a piece of real property and the proceeds of a Totten trust in the name of deceased in trust for her sister, the executrix. The intermarriage of the parties occurred in 1924. They executed a separation agreement in April, 1926. At that time the husband and wife held the real estate by the entirety. The agreement provided for the delivery of a deed by the husband of all his interest in the real estate. The deed so delivered recited that it was intended “ to bar every estate or right of the said grantor, John P. McCann, in said premises hereby conveyed including tenancy by the cur-tesy.” The court held that the separation agreement and the deed when taken together required construction that the surviving spouse had barred himself from any right of inheritance in the property of his wife. The court emphasized the reference to tenancy by the curtesy as showing the husband’s understanding that he was releasing a right which would vest only on his wife’s death. No appeal was taken in this case. The claimed right of election was held invalid though the court said that the “ validity of this deed as a waiver and release is not before the court.” The opinion says nothing concerning acknowledgments, but the inference is that the deed was acknowledged or proved since it appears to have been recorded.
In Taber v. First Citizens Bank & Trust Co. of Utica (247 App. Div. 580, 583, affd. 273 N. Y. 539) defendant was executor of a will made in 1927, three days after the marriage of deceased with plaintiff. Deceased died September, 1931. The action was initiated to compel specific performance of an alleged oral agreement to make a will providing for plaintiff. It also sought to set aside an acknowledged antenuptial agreement under which provision for the wife had been made. That agreement stated that it was intended to make provision for the prospective bride “ ‘ in lieu of the rights which, after the consummation of said marriage [she] might or could have as wife, or widow or otherwise in the property ’ which [the husband] then had or might thereafter acquire,” The court held the antenuptial agreement binding upon the widow according to its terms. It affirmed the finding of the court below that there was no oral agreement such as was pleaded and dismissed the *563 action. The appellate court held that the Surrogate had erred in interpreting the operative effect of the agreement under consideration and it directed judgment affirming the agreement as a waiver.
In Matter of Swanson (163 Misc. 294, 296) the widow of deceased elected against a will the date of which is not given but which would appear to have been drawn after the intermarriage of the parties in 1931. The spouses separated on December 19, 1932. On that day deceased gave his wife $3,900 and she executed and acknowledged a unilateral receipt and release in the form of the usual printed general release. The opinion emphasized that the tenor of this paper was expressly limited to its date and to rights then existent. It went on to say that the right of election which the widow sought to have validated had arisen only at a later date, to wit, on the date of deceased’s death and “was in no way provided for in this release, and apparently not contemplated therein.” Accordingly the widow’s right of election was held valid.
In Matter of Rogers (250 App. Div. 26) the court considered a decree of the Surrogate of Suffolk County enacted in July, 1936 and affirmed his determination that the petitioner was not entitled to an election. Petitioner had twice executed acknowledged waivers contemporaneously with the execution of wills by deceased. The first such waiver was unilateral and was prepared by the draftsman of the will of deceased and both will and waiver were executed on the day the parties intermarried, August 28, 1933. The next day the surviving widow executed a will and deceased executed a unilateral acknowledged waiver of his right of election against it. This instrument was prepared by the widow’s attorney. Later and on January 13, 1934 deceased’s attorney drew a new will and a unilateral waiver of the wife’s right of election against it. After deceased had executed his will the widow executed and acknowledged the waiver. She did not have independent counsel on this occasion and the evidence on the trial largely concerned itself with a claim of fraud upon the widow. But in the brief of the widow on appeal she asserted that the statute contemplated two varieties of waivers,— the first a waiver of right to elect against a particular will which could be by unilateral instrument only and the second a waiver of right to take against any will which must be by agreement. She argued the differences in the type of instruments prescribed so as to emphasize that in the one case the instrument needed no consideration and in the other the consideration was furnished hy the mutuality of the agree *564 ment. The brief asserted that the surviving widow received no consideration for her waiver and then argued that since the type of instrument was one that required no consideration it could be sustained only by the clearest possible showing of full and complete information on her part and of the performance on her husband’s part in the highest degree of his duty of honesty, fairness and integrity in dealing with her. Having-stated her legal position thus she went on to argue the claim of legal fraud but failed on the merits of this claim. The case is interesting because of the evidence it furnishes that highly competent counsel thought that the statute evidenced a legislative design to discriminate between “instrument” and “ agreement ”.
In Matter of Moore (165 Misc. 683, 685, 687-688, affd. 254 App. Div. 856, affd. 280 N. Y. 733) the surviving husband elected against the will of deceased and the issue was whether his election was valid. He was 40 on May 17, 1935 when he intermarried with deceased who was then 60. One week after the marriage he executed a unilateral document in which he declared that he waived his right of election “ to take against any Last Will and Testament ” of his wife. (Italics added.) The instrument was acknowledged and was delivered to Mrs. Moore’s attorney. The will of deceased in issue was executed on September 15, 1936. Counsel for the surviving husband argued (as did counsel in the Rogers case, supra) that the Legislature must be deemed to have employed the words “instrument” and “ agreement ” in different senses. These contentions were overruled by the trial court and are characterized by it as “highly refined, technical and tenuous arguments.” The opinion of the Trial Judge discusses the history of the statute and comments on the footnote to chapter 174 of the Laws of 1930 which completed subdivision 9 of section 18 of the Decedent Estate Law in the text which now stands. The comment on the footnote says that “ The waiver might be embodied in a trust deed executed by the husband or wife for the benefit of the other, or in a separation agreement, or in any other form of agreement ’ ’. It has already been made clear that the note to the bill speaks only of (1) a separation agreement, (2) an agreement in a trust inter vivas and (3) an agreement of settlement. The note does not say ‘ ‘ any other form of agreement ’ ’. Examination of the briefs in the Court of Appeals in the Moore case discloses that, the appellant argued at length the claim that the Legislature intentionally distinguished the word “ agreement ” from the word “ instrument ”, Pages of the appellant’s *565 brief are devoted to the wording of the statute. The Court of Appeals was expressly asked to rule that a unilateral agreement not confined to a particular will but purporting to be a waiver of right to elect against any will was not an “ agreement ” within the meaning of that phrase of subdivision 9 which speaks of waivers “ against any last will and testament.” The answering brief in Point II, subdivision A, expressly discusses the compliance with the statute of the paper executed by the surviving husband. The point asserts that the instrument, though unilateral, complied with the requirement of the statute for an “ agreement ”. The brief argued also however that the instrument constituted a release under seal and that there was at the date of the instrument a conclusive presumption of sufficient legal consideration arising from a seal. Separately the respondent argued that the instrument was a release for value because on other occasions deceased had executed waivers against wills of her husband. A learned commentator on probate law notes that the affirmance in this case was without opinion and that the action of the appellate tribunal is therefore to be considered only an affirmance of the result actually reached. He points out that in the case the equities were strongly against the would-be elector (1 Butler on N. Y. Surrogate Law and Practice, § 252).
In Thompson v. Thompson (163 Misc. 946, 947, affd. 254 App. Div. 601) the court had before it an action for partition in which apparently it was sought to determine whether a right of election could be exercised by a widow against a will executed in 1933. The parties had intermarried in 1928. One of the parcels involved had been acquired in 1914, the other in 1932. There was a separation of the couple in October, 1932 and in July, 1935 they entered into an acknowledged agreement of separation. In this agreement the wife released all her claims against the husband up to the date of the agreement and released her dower. It then provided that the wife “ covenants that she will permit any will of the First Party to be probated, and will allow letters of administration upon his estate and personal effects to be taken and received by any person who would have been entitled thereto, had the Second Party died during the lifetime of the First Party.” The court considered some other questions raised by the parties but said that the only issue which it needed to decide was whether the widow had lost her right of election by reason of her abandonment of deceased or by reason of her waiver. The court found on the facts that there was no abandonment by the widow. It held that the *566 release clause in the separation agreement did not constitute a waiver and that the clause dealing with the issuance of letters of administration likewise was without effect as a waiver. The court accordingly held that the widow had an interest in the land and directed that such interest be valued. The appellate court affirmed unanimously saying expressly that nothing in the separation agreement could be construed as a waiver of a right to elect against the will.
In Matter of Denison (166 Misc. 940, 941-942, revd. 255 App. Div. 294, affd. 280 N. Y. 589) the court considered acknowledged instruments, unilateral in form, which were executed simultaneously by the husband and the wife respectively. The wife survived her husband and elected to take against his will. The question was whether the instrument subscribed by her in 1926 barred her election. This instrument said on her part that she 1 ‘ renounces and releases to the said party of the second part [the husband], his heirs and assigns forever, all and any right, title, interest or right of dower in any property, both real and personal, that said second party may now be seized of or that he may hereafter acquire. And further that she specially renounces and releases to the heirs at law, next of kin, or legatees and devisees under the last'will and testament of said party of the second part, should said second party predecease said first party, all and any right, title, interest and right of dower, of every name and nature that said first party might have or be entitled in and to the estate, both real and personal, * # * and of which he may die seized.” The instrument recites that the agreement is mutual and that the desire of the parties is that their respective issue by former marriages should inherit from their respective parents. At the time the instruments were interchanged a daughter who was sole issue of the husband was living but she predeceased him. The Surrogate held that the instruments contemplated the continued existence of issue and that the death of the daughter of the husband defeated the object of the agreement. He held accordingly that a right of election enured to the surviving spouse. The Appellate Division noted that the will against which the claim of right to elect was urged had been made by the husband more than five years after his daughter had died. It reversed the Surrogate (citing Matter of Shapiro, 154 Misc. 55, supra) saying: 1 ‘ The agreements were a proper compliance with the provisions of section 18 of the Decedent Estate Law ” (p. 298). Again referring to the respective documents as “ agreements ” the court said .that they resulted “ in each of the *567 parties waiving and releasing any interest that he or she might have in the other’s estate in case of his or her prior death.” (P. 299.) The court also cited Matter of Moore (165 Misc. 683-691, supra) with approval. The determination that no right of election existed was affirmed in the Court of Appeals. It is notable that in its comment on the unilateral documents the Appellate Division consistently refers to the respective documents as “ agreements ”. It does not say that the two unilateral papers constituted one agreement.
In Matter of McGlone (171 Misc. 612, 614, revd. 258 App. Div. 596, determination of Surrogate reinstated 284 N. Y. 527) the court had under consideration an unacknowledged and unwit-nessed unilateral instrument signed by the surviving widow just prior to her marriage on February 4, 1922 with the deceased. In it the prospective bride said that she renounced “ all right, title and interest * * * in any estate, real or personal, of which my said husband to be, John J. McG-lone, might die seized.” Deceased executed a will on August 20, 1930 and a codicil on July 6,1934. The Surrogate said (p. 615) that subdivision 9 of section 18 spoke of “ three varieties of documents * * * namely, the ‘ instrument ’ of waiver against a single identified will, the 1 agreement ’ of waiver against any will which is executed after the effective date of the statute, and the * agreement ’ of waiver or release executed prior to the effective date of the statute ” (emphasis not in original). Having said that only a document of the particular description contemplated by the legislation would operate to constitute a waiver, the Surrogate held the document ineffective because not acknowledged. Having made a decision on this ground the Surrogate goes on to say (p. 618): “ The infirmity of the document does not, however, terminate here. The subdivision expressly prescribes the particular variety of instrument which is requisite for a waiver of the rights of election of a surviving spouse against all wills or in situations in which it was executed prior to the effective date of the statute. In both such connections such instrument must be ‘ an agreement ’. This term is a word of art possessing a well-defined and thoroughly established meaning in the law not only of this state but of every other common law jurisdiction.” The Surrogate held the paper signed by the prospective bride to be merely “ a unilateral statement of intention” and not an agreement. The writer expressly dissented from Matter of Moore (supra) and reaffirmed his own viewpoint stated in Matter of Shapiro (supra). Continuing with the argument as to the legislative meaning the *568 writer says that a unilateral instrument will be -effective against a single identified will because the Legislature expressly so provided. He then continues: “In respect of a waiver against any will made either before or after the effective date of the statute, the Legislature has pointedly and with reiteration adopted a diverse provision ” (pp. 619-620). The Appellate Division adopted the viewpoint in Matter of Moore (supra) and said (p. 601): “A unilateral agreement is sufficient when it is acted upon by the other spouse ” (emphasis supplied). The Appellate Division conceded the lack of compliance with the requirement for acknowledgment but held that the transaction between deceased and his wife had created contract rights which could not be impaired by a statute later passed. It reached the conclusion therefore that the instrument was a complete bar to the widow’s right to elect. In the Court of Appeals the view of the Appellate Division that the instrument created contractual rights which could not be invaded by the new statute was repudiated. The court expressly declined to say that this unilateral instrument was or was not a contract made between persons in contemplation of marriage within the meaning of section 53 of the Domestic Relations Law. It assumed that the instrument was such a contract and that it was executed as required by section 31 of the Personal Property Law. It further assumed that some ldnd of contract right might have been created by the instrument. It held however that the power of the State in respect of the descent and distribution of property is so broad as to make valid in any case the regulation of such right of devolution contemplated by section 18 of the Decedent Estate Law. The court said (p. 533): “A wife cannot * * * waive in advance a right created for her benefit if the law does not permit such a waiver.” The court further says (p. 534): “ The Legislature * * * had also undoubted power to protect the newly-created right by a statutory provision that a spouse might not waive the benefit of the right created for his or her benefit except by an instrument executed with the formalities set forth in the statute.” It held that the document did not estop the spouse. It validated her election on the single ground that the writing was not acknowledged.
In Matter of Colaci (260 App. Div. 795, revd. 288 N. Y. 158) the court had for review a decree of the Queens County Surrogate made on July 31, 1939 which validated a claimed right of election by a widow. The parties had intermarried in 1926 and owned as tenants by the entirety some 11 parcels of real property. In 1928 they agreed upon a distribution of this *569 real estate. Title to the parcels received by the deceased was taken by him in the ownership of Colaci Holding Corporation the stock of which was wholly owned by him. Deceased died in 1937 having executed testaments dated in 1936 and 1937 which gave the bulk of his property to brothers. The Appellate Division held — 3 to 2 — that the tenor of the interchanged deeds was such as to bar the surviving widow from participating in deceased’s estate to the extent that the value of her intestate share would be made up by the value of the six parcels which passed to Colaci Holding Corporation through her deed. The Court of Appeals reversed the Appellate Division (Finch, J., writing). The opinion quotes the last sentence of subdivision 9 of section 18 and says (p. 162): “It is clear that the instrument containing such waiver must be executed in all respects in accordance with the provisions of this statute.” It is notable that the writer in the Court of Appeals used the word “ instrument ” though the sentence he had just quoted contains only the word “ agreement.” Later in his opinion (p. 163) the writer says that there is no phraseology in the releases of dower and curtesy respectively ‘ ‘ which can be construed as a waiver of the right either ‘ to take against a particular last will and testament ’ or ‘ to take against any last will and testament,’ as provided in said subdivision.” (Here the discriminations suggested by Wingate, S., in Matter of McGlone [171 Misc. 612, supra] appear to be approved.) The writer says finally (citing Matter of McGlone, supra): “We have recently held that this right of election may only be waived by strict conformity with the provisions of subdivision 9.” The reversal of the Appellate Division and the affirmance of the Surrogate is ultimately placed however on the ground that the instruments executed by the widow constituted no more than releases of dower on her part and so did not constitute “ a renunciation of the essentially different right conferred by section 18.”
In Matter of Markel (175 Misc. 570, 571, affd. 261 App. Div. 950), the instrument under consideration was an acknowledged antenuptial agreement executed November 29, 1935. The parties intermarried three weeks after the date of the instrument. The will of deceased was executed 10 days later. Its dispositions conformed to the terms of the antenuptial agreement. The agreement contained a waiver by the husband of any right to elect against the will of his prospective wife. The prospective bride agreed that the testamentary provisions contemplated should be “in place and stead of all the rights which she, as *570 widow, might otherwise have but for this agreement.” Both parties waived ‘ ‘ ‘ the right of election conferred by section 18 of Decedent Estate Law * * * to take against any last will and testament of the other, and also * * * all other rights which each as the surviving spouse of the other, might otherwise have.’ ” It would seem from the report that the sufficiency of the document was not questioned and that the sole issue was whether the wife had been overreached. The waiver was held to be effective.
In Matter of Hearn (261 App. Div. 924, affd. 287 N. Y. 775) the court had under consideration a decree of the Queens County Surrogate adjudging to be invalid a notice of election filed by a surviving husband. The instrument in issue was an unwitnessed and unacknowledged separation agreement executed February 10, 1938. The will in question was executed February 9, 1935. Citing Matter of McGlone (supra) and Matter of Israel (149 Misc. 620) the Appellate Division held the separation agreement ineffective as a waiver solely because it was not acknowledged. In the memorandum prepared by the State Reporter (290 N. Y. 563) it is indicated that in the record there was evidence that the parties had lived together after the separation agreement had been executed. Th executor, having failed in his direct attack on the election, then instituted an action for specific performance of the separation agreement and sought to compel the surviving husband to execute and deliver a valid waiver of his right of election. The agreement was asserted to entitle the plaintiff to such a waiver since it provided that each signatory would join in “ any deed or instrument ” necessary to convey good title to the other’s property, “ without any claim or demand of or for any interest therein”. The prior text of the agreement expressly waived “ all right that either may have in the property of the other owned by the other at this time, or at any future time.” The trial court denied a motion to dismiss the complaint. The Appellate Division (Kissling v. Hearn, 264 App. Div. 900) reversed and granted the motion on the ground that the determination on the prior appeal was res judicata. It said in addition that the plaintiff could not “ invoke an agreement to execute a waiver, which would accomplish by indirection a dispensation of the requirement of subdivision 9 of section 18 of the Decedent Estate Law.” This result was affirmed in 290 N. Y. 563.
In Matter of Maul (176 Misc. 170, affd. 262 App. Div. 941, affd. 287 N. Y. 694) the instrument was not acknowledged by *571 the spouse but bore the names of two witnesses. Deceased had executed a will some four and a half years before he intermarried with his surviving spouse. He executed a codicil on the day of marriage, August 19, 1939. Contemporaneously she signed the unilateral paper in issue which stated that she had read the codicil and was fully satisfied with its provisions and that she accepted such provisions in full satisfaction of her share in any estate which her husband might leave at his death, any other provisions of law to the contrary. She also released and discharged ‘ ‘ his estate from any other and further liability ”. At the instance of the respondent the witnesses to the instrument were summoned by the Surrogate and their testimony taken pursuant to sections 304 and 305 of the Beal Property Law. The Surrogate held that section 11 of the General Construction Law was applicable to the situation. He called attention to the provisions of sections 291 and 292 of the Beal Property Law which provide on the one hand for an acknowledgment by the person executing an instrument and for proof on the other hand by a witness to the execution who subscribed his name as a witness at the time. Stating that the question before him was whether the instrument was duly acknowledged, he construed subdivision 9 of section 18 of the Decedent Estate Law as not prescribing the time when the acknowledgment shall be made and as not requiring that it must be made by the person executing the instrument. He took the proof of the instrument under the cited sections of the Beal Property Law and the General Construction Law and held that the instrument barred the claimed right of election. In the Appellate Division the decree below was affirmed by a divided court. The dissenting Judge said in his memorandum that the words “ duly acknowledged ” and “ so executed” should be construed as requiring an acknowledgment by the signer of the instrument before a proper officer. He voted for a reversal and the granting of the right of election because of his view that the instrument was defective, citing Matter of McGlone (171 Misc. 612, supra) and Matter of Hearn (261 App. Div. 924, supra). The Court of Appeals affirmed without opinion (287 N. Y. 775).
In Matter of Herrick (177 Misc. 537) a surviving widow sought to elect against a will. Her claim was contested on the ground that after some hotly litigated matrimonial differences the spouses entered into an acknowledged separation agreement on January 21, 1938 which contained among other things a waiver by the wife of her right to elect. The trial appeared to have proceeded on the issue of the fairness of the agree *572 ment rather than on its operative effect. It was held to be an effective waiver.
In Matter of Lamash (8 Misc 2d 544), the court had for consideration an acknowledged antenuptial agreement made in 1933 and alleged to be a waiver of right to elect against a will made in 1936. The agreement was held by the court to be limited in its operative area to the rights of the parties in a single piece of real property. After noting that the text of subdivision 9 of section 18 of the Decedent Estate Law refers to waiver of right to elect against a particular will and to waiver of right to elect against any last will and testament, the court says (p. 545): “ The agreement here relied upon refers neither to a particular will nor any will. It contains no express waiver. Neither can one be inferred from its provisions. There is no reference to a waiver or release of all rights in the estate of the testator. By its terms the surrender or release of petitioner’s rights is limited to a particular piece of real estate.” The agreement was held not to bar a notice of election.
In Matter of Chandler (175 Misc. 1029) the court had under consideration an acknowledged separation agreement made apparently in the year 1937. At its date the husband was over 60, was unemployed and had no property of his own. The agreement expressly recognized that he had no earning capacity and expressly dispensed him from any agreement to support deceased. By the agreement he received $100 to cover his expenses in moving. The will disinherited the husband who elected against it. The court held that the separation agreement and the circumstances of the parties established that the electing spouse had not abandoned deceased and that his failure to provide her with support was with her consent. The court validated his claim to an intestate share and his claim to a family exemption under section 200 of the Surrogate’s Court Act. The opinion emphasizes the reservation by the husband of a right to sue his wife respecting property in her name. No text is suggested to have been in the agreement which constituted a release of rights of inheritance.
In Matter of Willett (178 Misc. 1000, 1001-1002), the court had under consideration an agreement of separation made in 1937 between deceased and a former wife under which deceased agreed to make provision for her in his will and to pay her a monthly sum while he lived. The agreement provided that if deceased died leaving a widow or children the former wife would take one third of his residuary. Deceased obligated *573 himself to so provide in his will. Thereafter the parties to the separation agreement were validly divorced. Some time after the divorce deceased executed his last will and in it complied with the terms of the separation agreement.
At the date of the will deceased was contemplating marriage with a second woman and a week after the date of his will — July 7, 1938 — deceased entered into an antenuptial agreement with the latter. In this antenuptial agreement it was expressly provided that neither party thereto should have any claim to or in the personal estate of the other and that the estate of each should pass as prescribed by will or in intestacy “ as though no marriage had ever taken place between ” the parties thereto. In the antenuptial agreement deceased agreed to provide for his second wife if she survived him a sum of $7,500. This sum is described as “in full satisfaction, payment and discharge ’’ of all her rights as ‘ ‘ widow, or heir at law, to an allowance * * * or to any share, or part of, or interest in,” the estate of deceased under either ‘ ‘ present or future law. ’ ’
On July 8, 1938, deceased intermarried with the lady who so made the antenuptial agreement with him. He died survived by her and by his former wife who was entitled as of the death of deceased to the benefits provided for in the separation agreement. Both the separation agreement and the antenuptial agreement, it should be noted, were duly acknowledged by the parties. The argument of the former wife of deceased was that the second wife was disentitled to make claim of status as widow because of the antenuptial agreement and that those provisions of the separation agreement should be given effect under which the first wife would take two thirds of the residuary if deceased' died ‘1 leaving neither widow * * * nor any child him surviving.” (P. 1001.) The court held without basis a separate ground of attack on the status of the second wife of deceased and then went on to say that the antenuptial agreement could not be given the effect contended for by the first wife; that it preserved deceased’s “right to dispose of his estate by will ‘ as though no marriage had ever taken place ’ ”; and that deceased was free to give to his second wife any benefit he chose under the will consistent with his obligations to his former wife under the separation agreement. Accordingly the court held that only one third of the net was payable to the first wife. The court held however that the second wife by executing the antenuptial agreement had effectively waived her widow’s exemption under section 200 of the Surrogate’s Court Act.
*574 In Matter of Cohen (N. Y. L. J., Feb. 25, 1943, p. 763, col. 6) the issue was whether a surviving widow could have letters of administration on the estate of her intestate spouse who left a net personal estate of $75,000. He was survived by the children of a prior marriage as well as by his widow. His children set up as a bar an agreement executed between deceased and his spouse about four months prior to his death. Apparently the agreement was drawn by the deceased’s attorney and provided in substance that the wife should receive $5,000 in lieu of her distributive share in deceased’s property. Both parties signatory were unable to write English and the surviving spouse appears to have had. very limited capacity to read English. The agreement was acknowledged by the parties before a notary in a. store near their residence. The. widow asserted that she was overreached and tendered back the $5,000 received by her. The trial court held that the agreement was obtained fairly and that it operated to deprive her of the right to letters. The case, like Matter of Brown (153 Misc. 282, supra) discusses agreements to waive distributive shares as having been recognized and' validated by courts in the past. It draws an analogy between the case under consideration and Matter of Market (175 Misc. 570, supra) and Matter of MoGlone (171 Misc. 612, supra). The view expressed is that the same principles apply to an agreement such as that under consideration whether it relates to a testate or to an intestate estate.
In Matter of Brenner (44 N. Y. S. 2d 447) the writing was apparently a duly acknowledged separation agreement between husband and wife who were represented by respective counsel. It was dated in April, 1942 and was urged as a bar to an election against a will made in May, 1942. Among other things the agreement contained a clause which said: “ Each party hereby waives all rights of election to take any property against any last will and testament of the other party and also waives any intestate share of the property of the other party ’ ’. (Matter of Brenner, 43 N. Y. S. 2d 149, 151.) The right of election claimed by the husband was held barred.
In Matter of Lambert (183 Misc. 115), acknowledged waivers indorsed on a will executed in 1934 and on a codicil executed in 1935 respectively were assumed to be valid though no ruling was made thereon. The proceeding was one for construction of the terms of the will.
Some few cases may be noticed also which were decided after the change in our Decedent Estate Law though they dealt with instruments executed prior to September 1,1930. The cases are *575 of interest because they exhibit the attitude of the courts toward agreements affecting rights of inheritance generally and were decided at a time when the newly created rights of spouses were also before the courts.
In Matter of Burridge (261 N. Y. 225, 227), the question was whether a separation agreement made in 1917 and revised in 1929 would operate to defeat a claim to property exempt under section 200 of the Surrogate’s Court Act. The agreement under consideration provided for payments to the wife so long as she lived, in return for which she agreed ‘ ‘ to accept all the provisions * * * in lieu of all other claim and provision for her support ”. She also renounced all rights of dower in deceased’s real property. The court said that had the agreement been limited to the joint lives of the parties it presumably would have left the wife free to claim her rights against the deceased’s estate (referring to Girard v. Girard, 29 N. M. 189). It held that since a reasonable construction of the agreement was that it contemplated complete exoneration of the other spouse and his estate in return for the annual payment for the life of the widow her claim to exempt property should be denied. The reasoning of the opinion would seem to be applicable to a claim of right to elect. In Girard v. Girard (supra) the Supreme Court of New Mexico reviewed a number of authorities in various States and held that a separation agreement would not be construed to affect rights of inheritance unless it so provided in express terms or by necessary implication.
In Matter of Green (165 Misc. 108, 109) the court had for consideration a will made in 1908 before deceased’s marriage. The will was offered by deceased’s sister and the widow filed objections to it. The sister moved to strike out the objections on the ground that an antenuptial agreement executed- between deceased and his surviving widow operated to release all interest in deceased’s estate on the part of the widow, and so removed her from the class of persons ‘ ‘ interested in the estate ” and entitled to file objections. The agreement provided a sum of $18,000 yearly for the life of the prospective wife and in consideration therefor she “ waived and released all interest in the decedent’s estate ”. The widow made attack upon the antenuptial agreement on various grounds which were held insufficient. The court struck out the objections on the ground that the antenuptial agreement' disentitled the widow to file them.
*576 In Matter of Griffith (167 Misc. 366, 367) the court had under consideration a separation agreement made in 1914. Whether it was acknowledged does not appear from the opinion. The will in issue was made in 1915. The agreement said nothing about the heirs and legal representatives of the parties nor did it refer to dower, to rights of inheritance, to a will, to a right of exemption or to any other post-mortem rights. It did contain a provision for monthly payments “ in lieu of all claims or rights to support arising out of the marriage.” After a careful discussion of the authorities in this and other States the court held that the separation agreement, when rightly understood, was intended to measure the widow’s rights only while her husband lived and that it did not deprive her of her status as widow entitled to contest the will. On the merits of the contest the widow was defeated but the case shows that the courts limit the operative area of instruments of the sort there under consideration in accordance with the intention of the parties.
In Schoonmaker v. Crounse (261 App. Div. 77) the court had under consideration a separation agreement made in 1926. The question was whether such agreement operated to revoke a will made in 1917 which gave deceased’s entire net estate to her husband. The Supreme Court had held that nothing in the agreement worked a revocation. This was sustained on appeal, citing Thompson v. Thompson (163 Misc. 946, supra) to the effect that such an agreement would not be held to cut off rights by implication.
Finally a brief word is desirable about cases decided before the change in our Decedent Estate Law effective in 1930. The eases are too numerous to discuss seriatim but some typical cases may be noticed. In Matter of Wylie (187 App. Div. 840) a separation agreement was held to bar a widow even from the right to take exempt property. In Matter of Klein (121 Misc. 568) this court held that a separation agreement barred objections to the will of deceased since by reason of the terms of the agreement the widow was no longer “ a person interested ” in the estate. Again in Matter of Kiltz (125 Misc. 475) a separation agreement was held sufficient to disentitle the widow to any benefits under section 35 of the Decedent Estate Law arising by reason of her intermarriage with deceased after the date of his will. The opinion in this case discusses a great number of authorities on the effect of separation agreements. It holds that under the agreement before the court the widow had no interest in the estate and could not file objections to the will.
*577 Only a brief word need be said about the instances in which claims of oral waivers have been adjudicated. In Matter of Israel (149 Misc. 620) Surrogate Wingate had before him an application by a widow to validate her right of election. The will of the deceased husband contained a recital that the testator and his electing widow had entered into an agreement under which she waived all interest in his estate. There was no proof of any written agreement. Surrogate Wingate dealt briefly with the matter and said that under the statute the instrument of waiver must be in writing to be effective. A like claim was advanced in Matter of Bosenfield (N. Y. L. J., May 19, 1944, p. 1947, col. 2). In this case the co-ordinate branch of this court characterized as frivolous a claim that a widow was bound by an alleged oral waiver. This case is interesting, too, because of the holding that a spouse by presenting a will for probate or by taking office as fiduciary under it does not waive a right to elect.
The foregoing review of the decided cases suffices to show that the obscurities in the text of subdivision 9 of section 18 of the Decedent Estate Law have repeatedly given rise to queries in the minds of lawyers and judges as to the true meaning of the legislative text. In the search for that meaning a comment of Surrogate Wingate in Matter of Bommer (159 Misc. 511, 512, 513) is pertinent. The fact is that some of the decided cases originated before Surrogates who were members of the Commission to Investigate Defects in the Law of Estates. In the cited case Surrogate Wingate said that as a member of the commission he was “ completely conversant with the motives and purposes which actuated the Commission ”. He said in addition that he possessed “ a clear conception of the actual legislative intent”. But then he said: “ Use of this personal knowledge is, however,- inhibited by basic rules of decision, and the only bases of interpretation which may be employed are the words of the enactment when read in the light of the explanatory notes which were before the Legislature at the time of the consideration of the proposed bills.” Since it is settled law that the Legislature itself could not say what its prior legislation was intended to mean (City of New York v. Village of Lawrence, 250 N. Y. 429, 447, 448) Surrogate Wingate was clearly right in saying that neither he nor any member of the commission could, on the basis of individual views derived from participation in the work of the commission or even on the basis of personal preparation of the statutory text, say what the Legislature meant by the text here under consideration. All judges alike must use only the accepted standards of decision. As Surrogate Wingate says, *578 the background of the legislation may legitimately be taken into account as well as the legislative notes to the section and to the subdivision especially where, as here, the courts asked to interpret the section have for inspection as part of that background legislative documents which reveal the purposes of the legislation in some instances more clearly than do the notes appended to the bills which were presented to the Legislature. Such documents are of prime interest here because the proposed legislation of 1928, the actual legislation of 1929 and the eventual amending legislation of 1930 stem from the recommendations of the Commission to Investigate Defects in the Law of Estates and the reports by it of professional and public reactions to the 1928 and 1929 proposals.
The insistence of the Bar that existing family arrangements be left undisturbed was the major consideration in the final composition of the text of the subdivision. The cited cases show congruity of judicial attitude in respect of such agreements whenever made. They show that the courts have construed the subdivision in accordance with the same general legal principles as those which governed the decision of cases arising prior to its enactment. In none of the cases analyzed did the decision turn on the point that the writing was unilateral rather than bilateral. In no case did the decision turn on the point that the writing was executed before marriage rather than after marriage. In no case did the decision turn on the point that the writing was executed prior to September 1, 1930 rather than after August 31, 1930. In no case did decision turn on whether the writing construed referred to a ‘ ‘ particular ” or “ any ’ ’ will rather than to ‘ ‘ all rights in the estate ”. The cases since the enactment of the subdivision evidence that the courts in construing writings asserted to constitute waivers took into consideration the factors always present in litigations respecting writings. They considered the background of the parties, the circumstances attending the preparation and execution of the paper in controversy, the objective which the parties sought to attain and the tenor of the paper itself. Clearly the courts have assumed that the Legislature did not intend to disturb the body of case law established prior to 1928 nor intend to defeat existing family arrangement or to deny complete freedom in the making of such arrangements.
Only in the McGlone (171 Misc. 612, supra) and Colaci (260 App. Div. 795, supra) cases is there any language which suggests a strict construction of the text of the subdivision. In each of these cases such declarations were obiter. All that the McGlone case decided was that the statute in express terms *579 required an acknowledged instrument. All that was decided in the Colad case was that the operative area of the deeds relied upon as waivers did not reach to the extent of constituting a waiver. In Matter of Maul (287 N. Y. 694, supra) the Court of Appeals held that the acknowledgment might be made by a subscribing witness, though under a strict rule of construction of the subdivision it must have been held that only an acknowledgment by the signer of the document would suffice. The cases reviewed make it clear that no distinction has been made between a so-called 1 ‘ instrument ’ ’ and a so-called ‘ ‘ agreement ’ ’. These cases also make it clear that the references in the subdivision to “ a particular last will ’ ’ and to “ any last will” imported no legislative intent to categorize the writings effective as waivers. The cases make it clear, too, that the phrase “before or after marriage” and the phrase “before the taking effect of this section ” were not intended to make time of the essence. The courts have correctly apprehended that the subdivision 11 just growed ’ ’ in its progress through the legislative mill and that the varieties of language contained in the text of the subdivision are fully explained by its legislative background. The legislative text has the sorry distinction that in its two sentences are found seeds of controversy so many as to cause doubt that any other legislative text of comparable length has ever posed so many problems. After 13 years of litigation controversy respecting the meaning of the subdivision has not been quieted. If this survey will aid the profession in interpreting the subdivision the time spent by the court will have been usefully employed;
The writing executed and acknowledged by the surviving spouse of deceased is held to constitute an effective waiver on his part of a right of election against her will. His purported notice of election to take an intestate share is held to be without validity and to have no operative effect on the terms of deceased’s will. Submit, on notice, decree accordingly.