In the Matter of the Estate of MARY C. LA DUE, Deceased. HENRY W. KOCH, as Committee of ARTHUR E. LA DUE, Appellant; ANDREW L. SIPOS, as Executor of MARY C. LA DUE, Deceased, et al., Respondents.

Fourth Department, December 20, 1957.

*Paul Reed Taylor* for appellant.

*Andrew L. Sipos,* respondent in person.

*William McKeon* for Edward C. La Due, respondent.

KIMBALL, J. The question presented is whether the surviving husband of the testatrix, Mary C. La Due, by virtue of the provisions of a separation agreement entered into on May 26, 1920, effectively waived or released all his rights in the estate of the said testatrix, pursuant to subdivision 9 of section 18 of the Decedent Estate Law. The surviving husband, being an adjudged incompetent, his claimed right of election to take against the will was duly exercised by the committee of the incompetent, in accordance with subdivision 6 of section 18 of said law. The petition to the Surrogate for the determination of the validity of the election was by the executor of the last will of the deceased wife. The will was executed on July 20, 1950. There was no mention of the husband therein and no provision was made for his benefit. The testatrix died on August 14, 1955. The will was probated on October 4, 1955. The primary and principal beneficiary under the will is Edward C. La Due, son of the testatrix. We are not informed of the character or size of the estate. However, that information is not essential to our determination.

It is unnecessary to here recite the whole separation agreement. The parties agreed " to live separate and apart from each other during their natural life." The husband agreed to permit the wife to reside where she chose and promised not to " sue, molest, disturb or trouble any person whomsoever, for receiving, entertaining or harboring her; and *that he will not claim or demand, any of her moneys, jewels, plate, clothing, household goods or furniture, which the said Mary C. La Due*

*now hath in her power, custody or possession, or which she may at any time hereafter have, or which shall be devised or given to her, or that she may otherwise acquire."* The husband then agreed to convey to the wife his interest in a house and lot, then the home of the parties and he agreed to transfer to her the household furniture then in the house, with certain exceptions. The above, in brief, is a statement of everything which the husband promised or agreed to do and of everything, including any rights he had, which he either waived or released. The remainder of the agreement is a recitation of the agreements and releases by the wife which presumably were carried out. The wife agreed to pay the husband $800 in cash and $100 to one Hurley "balance due him for attorneys fees for which the first party [husband] might be responsible." The wife, as second party, released the husband of all obligation of support and care of herself and the son, Edward. She also released her inchoate dower interest in any real property of the husband which he then owned or thereafter acquired and appointed an attorney in fact to execute "any release or conveyance of said inchoate right of dower."

Some testimony was taken before the Surrogate which sheds no light upon the issue. No memorandum or opinion was written by the Surrogate except the statement at the close of the hearing that: "The Court finds that it is a valid agreement and there is no right of election." There was no contention as to the validity of the separation agreement. That was not the issue. The question was whether, by the execution of the separation agreement, the husband intended to waive or release all rights in the wife's estate so as to effect a waiver or release of his right of election. This question the Surrogate did not consider, evidently being of the opinion that if the separation agreement was valid, it followed that there could be no right of election.

The agreement between the husband and wife having been made prior to the enactment of section 18 of the Decedent Estate Law, the relevant portion of subdivision 9 of the section is as follows:

"A waiver or release of all rights in the estate of the other spouse shall be deemed to be a waiver or release of the right of election as against any last will."

There being no evidence to show the intention of the husband except the agreement, the intention must necessarily be gathered from the provisions of the agreement itself. The burden of establishing a waiver is upon the one who asserts it.

(*Matter of Colaci*, 288 N. Y. 158, 162.) We are convinced that the agreement herein falls far short of being a "waiver or release of all rights in the estate" of the testatrix.

The respondents rely almost solely upon the decision in *Matter of Sturmer* (303 N. Y. 98). When that case was before this court (277 App. Div. 503), we divided three to two in holding that there was no waiver of the right of election. The Court of Appeals unanimously reversed and the reasons for such reversal were clearly and unmistakenly stated in the opinion of Judge Lewis. There it was pointed out (p. 105) that the agreement in question referred to "all right, title or interest of every kind, name and nature, she may have". In the instant case, the husband merely agreed not to "claim or demand" certain specified categories of personal property. In the *Sturmer* agreement, the wife not only released "all right, title or interest" in her husband's property which he then had or might acquire in the future but she agreed to execute releases "which may or might become proper and necessary to be executed, and having to do with or affecting the interests, property, property-rights, *and estate* of the first party, her said husband * * *." In the agreement before, us, there is nowhere a mention of "estate". It was largely upon the word "estate" that the Court of Appeals made its determination. To hold that the agreement here considered, was a "waiver or release of all rights in the estate of the other spouse" would necessitate the writing of a new agreement for the parties and one which, we think, was never within their contemplation when it was made in 1920, prior to any statute giving a surviving spouse the right to take against the will of the other. At that time, there were dower and curtesy. The husband conveyed his interest in the home to the wife and she in turn released her inchoate right of dower as to real property subsequently acquired by him. There having been a child born alive of the marriage, the husband had the right of curtesy in the wife's real property, after her death. Not only are there no words of waiver and release as to real property of the wife but real property then owned or after acquired by the wife is not mentioned. The husband did not waive or release his right of curtesy.

There are no words, sentences or phrases which indicate that the husband did more than to agree not to demand certain classes of personal property which the wife had or might have during her life. There was no release of other classes of personal property during the wife's life or in her "estate" after her death. No mention was made of stocks, bonds,

mortgages, domestic animals, equipment or other items of personal property. A waiver or release of something less than "*all rights in the estate of the other spouse*" is not a compliance with the statute (Decedent Estate Law, § 18), and may not "be deemed to be a waiver or release of the right of election as against any last will." (*Matter of Colaci*, 288 N. Y. 158, *supra*; *Matter of Sachs*, 155 Misc. 233, affd. 246 App. Div. 546; *Thompson* v. *Thompson*, 163 Misc. 946, affd. 254 App. Div. 601; *Matter of Lamash*, 8 Misc 2d 544).

The decree should be reversed and the matter remitted to the Surrogate's Court to enter an order or decree in accordance with this opinion.

WILLIAMS, J. (dissenting). The majority opinion outlines the basic provisions of the separation agreement. However, in order to ascertain the intentions of the parties, certain additional and more specific language of the agreement and a consideration of the surrounding circumstances might be emphasized. That portion which relieves the husband from his obligations to support his wife and eight-month-old son is significant because of its very broad terms and its far-reaching effect. The husband is relieved "from all obligations of every kind and nature for and on account of the support of [the wife] and their infant son Edward, and also care and medical attendance * * * and the [wife] assumes * * * the care, education, support and maintenance of said infant from now henceforth." Although the testimony is vague and meager, it may be gleaned from the record that the parties could well have anticipated that the wife would encounter financial difficulty in performing the obligations she thus assumed. Actually, thereafter, the husband never assisted either the wife or the child financially.

When he left the testatrix, the surviving husband retained certain items of personal property and turned all the rest over to testatrix. He transferred all his right, title and interest in the real property in Seneca Falls in return for the payment of $800 to him and $100 to an attorney to whom the husband *might* have been indebted. He agreed that he would not claim or demand any moneys, jewels, plate, clothing, household goods or furniture which testatrix then possessed or which she might possess *at any time* thereafter.

It is from all of this that the intention of the parties must be discovered.

"In our view the paragraphs quoted above from the written instrument make clear the intention of the petitioner to make

no claim against her husband's property while he was alive or against his estate in case she survived him. It is difficult to conceive of language which would express more clearly the wife's intention to relinquish all her rights to her husband's property and ' estate '. * * * Where, however, as in the case at bar, the separation agreement was subscribed and duly acknowledged, and there is no evidence of fraud or concealment in the execution of the agreement; and where the agreement indicates clearly an intention by a wife to waive her rights in her husband's estate, we conclude she may not now elect against the will under section 18 of the Decedent Estate Law." (*Matter of Sturmer,* 303 N. Y. 98, 105–107.) Thus, in the *Sturmer* case, the court stressed the intention of the parties rather than the precise language employed as the controlling factor.

In view of the comprehensive nature of their division of property, it appears that the written agreement, executed by the parties, fairly represented the intentions of the parties that it should be a just and equitable settlement of *all* their affairs. The agreement, considered as a whole, bears a definite stamp of finality. The husband apparently had no interest in the welfare and financial situation of testatrix or of his child and both parties considered that their status with one another had been completely and finally settled. Since sections 18 and 83 of the Decedent Estate Law had not been enacted at the time the separation agreement was executed, there could have been no specific reference to a waiver of a right of election not then known to the law. In the present case, the broad language used in the agreement, disposing of the husband's rights to property, then held by the wife " or which she may at any time hereafter have, or which shall be devised or given to her, or that she may otherwise acquire " is likewise sufficient to meet the demands of subdivision 9 of section 18.

The opinion in *Matter of Schwimmer* (8 Misc 2d 550) provides a comprehensive review of New York cases, dealing with agreements which effected a waiver of elective rights. These cases " took into consideration the factors always present in litigations respecting writings * * * the background of the parties, the circumstances attending the preparation and execution of the paper in controversy, the objective which the parties sought to attain and the tenor of the paper itself." When all these factors are considered in the present case, the picture presented is that of a husband and wife, completely severing their relationship and property rights for all time. From a very technical point of view the enumeration of certain

personal property might indicate that all other property should be excluded from the scope of the agreement, but technical construction is of little help to determine the intention of these parties.

It is my conclusion therefore that by executing this separation agreement, the husband waived his right of election as to any of his wife's estate.

At the very least, however, the agreement should be given effect as a waiver of the right of election as to that property specified. This court recently in *Matter of Wesche* (4 A D 2d 997) decided that a waiver could bar a right of election as to part of an estate. From the record, it is impossible to determine if, in fact, there are any assets in the estate which would be outside the scope of the separation agreement. The language " or which she may at any time thereafter have " should not be interpreted to mean only during the wife's life, but rather should extend to include claims to her estate.

All concur, except WILLIAMS, J., who dissents and votes for affirmance, in a separate. opinion. Present — McCURN, P. J., VAUGHAN, KIMBALL, WILLIAMS and BASTOW, JJ.

Decree reversed on the law and facts, without costs of this appeal to any party and matter remitted to the Surrogate's Court for further proceedings not inconsistent with the opinion.