John D. Bennett, S.
This is a proceeding commenced by the executor to settle his account and to determine the validity of a right of election filed by the decedent’s widow.
The petitioner relies on an antenuptial agreement executed by the widow as a waiver of her right of election. The answer of the widow alleges that the antenuptial agreement contains no waiver or release of the respondent (widow) to take as against the will admitted to probate or any will of the decedent, nor does the agreement contain any waiver or release,of all the widow’s rights in the estate of the decedent.
The antenuptial agreement provides in part: “ Each of them hereby agrees with the other, in view and consideration of said proposed marriage, that * * * all property belonging to either of them at the commencement of this marriage or coming to either of them during the marriage, shall be and be enjoyed by her or him and be subject to her or his disposition as her or *1091 Ms separate property in the same manner as if said proposed marriage had never been celebrated ”.
The recital portion of the agreement expressly states the motivation of the agreement to be the assumption by the decedent of the responsibility to care for, support and maintain his former wife and two daughters of that marriage. It is respondent’s contention, relying primarily on Matter of Fredenthal (25 Misc 2d 1068), that the agreement grants to each free disposition of his or her property during life, but makes no reference to each other’s estate after death. For this reason respondent has objected to the oral testimony, by the executor draftsman of the agreement, as to the intention of the decedent concerning the effect of the instrument, asserting that the instrument is not ambiguous and that such extrinsic evidence varies and modifies the agreement. The testimony was taken subject to the objection, and decision was reserved by the court.
It must be agreed, of course, that' no difficulties of construction are present when the instrument purporting to relinquish a right of election states precisely that all rights in the estate of the other spouse are waived or released, since this is the very language prescribed by the statute, which is stated to result in the release of a right of election (Decedent Estate Law, § 18, subd. 9). It is in those situations where something less appears that resort is necessary to construction and the surrounding circumstances. As the court said in Matter of Brown (153 Misc. 282, 284): “ Where the terms of the agreement are clear and only one reasonable interpretation can be given, that construction will be adopted and the words employed in the agreement will be given their ordinary meaning unless it appears from the expressed intent of the parties, or from their conduct or the circumstances, that a special meaning was intended.”
Although Matter of La Due (5 A D 2d 52) is quoted with approval in the Fredenthal case (supra), to the effect that a waiver or release of something less than all rights in the estate of the other spouse is not in compliance with the statute, and may not be deemed a waiver of a right of election, even the La Due case mentions testimony taken before the Surrogate “which sheds no light upon the issue” (p. 54) and again ‘1 There being no evidence to show the intention of the husband except the agreement, the intention must necessarily be gathered from the provisions of the agreement itself ” (p. 54).
In Matter of Rosenbaum (27 Misc 2d 492, 493) the court, in substantially the same language, said: ‘ ‘ There is nothing in the evidence adduced at the hearing which casts any light upon the intention of the parties to the agreement.”
*1092 Following a comprehensive review of New York cases dealing with the subject, Surrogate Delaiianty, in Matter of Sclwimmer (8 Misc 2d 550, 578), said “ the courts in construing writings asserted to constitute waivers took into consideration the factors always present in litigations respecting writings. They considered the background of the parties, the circumstances attending the preparation and execution of the paper in controversy, the objective which the parties sought to attain and the tenor of the paper itself.”
Accordingly the objection to the testimony of the executor draftsman is overruled.
It is sufficiently clear from the testimony as to the conferences which took place between the decedent and the respondent in the presence of the executor draftsman, that the intent of the decedent, in executing the instrument, was to allow him to dispose of his estate by will, unfettered by any claims of his future wife against that estate, and it is also clear that the respondent assented and agreed to that proposition. The respondent introduced no testimony of her own to contradict the substance of the conferences held prior to the execution of the agreement, as testified to by the executor draftsman, although she was present in court and had an opportunity to take the stand.
Although a surviving spouse’s right of election should not be denied on account of an agreement, unless the purpose to exclude her is clearly expressed or inferable (Matter of Rosenbaum, supra), that inference may clearly be drawn here from the testimony adduced and from reading the agreement in its entirety. Following the above-quoted language of the agreement, granting to each free disposition of his or her property, there is one exception: ‘ ‘ except that the proceeds of a policy of insurance * * * in the face sum of Twenty Thousand ($20,000) Dollars * * * upon the life of Alexander F. Stoeger shall be, by testamentary disposition or by designation of Ruth Humphreys as beneficiary, payable to Ruth Humphreys upon the death of Alexander F. Stoeger during the term of such policy” (italics supplied). There appears to be no reason to except this one item unless the respondent was not to have any claim to any other property in the decedent’s estate after his death. The exception of the proceeds of the insurance policy from the effect of the agreement, together with the circumstances surrounding its execution, demonstrate that the parties intended the agreement to affect rights by reason of the respondent’s marriage to the decedent in the event of death.
The agreement also complies with the formalities of execution required by the statute, even though the acknowledgment *1093 by the subscribing witness took place a number of years following its execution by the respondent (Matter of Maul, 176 Misc. 170, affd. 262 App. Div. 941, affd. 287 N. Y. 694), and the 1947 amendment to subdivision 9 of section 18 of the Decedent Estate Law (L. 1947, ch. 379), which requires the waiver or release to be either acknowledged or proved in the manner required for the recording of a conveyance of real property, was prompted in part by the Law Revision Commission’s conclusion that the holding in Matter of Maul (supra) should be codified (1946 Report of N. Y. Law Rev. Comm. [N. Y. Legis. Doc. No. 65], p. 238).
The respondent is accordingly held to have waived her right of election to take against the decedent’s will.